**AMALGAMATED ASSOCIATION OF STREET ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES, DIVISION 1225, Appellant,**

v.

**LAS VEGAS–TONOPAH–RENO STAGE LINE, INC., Appellee.**

No. 17812.

United States Court of Appeals Ninth Circuit.

July 2, 1963.

Neyhart & Grodin and Joseph R. Grodin, San Francisco, Cal., for appellant.

John H. McNamee, Las Vegas, Nev., and Ernest S. Brown, Reno, Nev., for appellee.

Before CHAMBERS, Circuit Judge, MADDEN, Judge of the Court of Claims, and DUNIWAY, Circuit Judge.

MADDEN, Judge.

The union and the employer company made an "agency shop" agreement. That kind of an agreement provides that employees who do not join the union will pay the regular initiation fee and dues to the union, and that if they do not make these payments, the employer will discharge them. The employer, having made this agreement, refused to carry it out by discharging employees who did not join the union and did not make the payments to the union required by the contract.

The union brought this suit in the United States District Court for the District of Nevada, asking for a declaratory judgment that the agency shop agreement was valid, and an order requiring the employer to comply with the agreement.

The National Labor Relations Act, § 8(a) (1) and (3), 29 U.S.C. § 158(a) (1) and (3), makes illegal a closed shop, i. e., an agreement under which an employer can neither hire nor work persons not members of the union, but, by proviso, it expressly permits an agreement requiring employees, after the thirtieth day following their employment, to become members of the union, but by further proviso the employer is forbidden to discharge an employee for nonmembership in the union if the union refused to admit him as a member for any reason other than a failure to tender the regular initiation fee and dues. Thus § 8(a) (3) forbids the closed shop but permits the "union shop."

But the generality of the sanction of the union shop is importantly qualified by § 14(b) of the Act, 29 U.S.C. 164(b), which says:

"Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial Law."

This section gave to each state the option of outlawing collective bargaining agreements providing for the union shop. Some eighteen states have exercised this option by constitutional or statutory provisions known as "right to work" laws.

The State of Nevada, from which the present controversy comes, has a "right to work" law.

The National Labor Relations Act applies only to enterprises which are in interstate commerce, or whose operations affect interstate commerce. The defendant employer in this case is concededly subject to the National Labor Relations Act.

The district court granted the defendant's motion for summary judgment. In a thoughtful and rather lengthy opinion, in 202 F.Supp. 726, Chief Judge Ross explained his conclusion. He said that, under § 14(b), Nevada had the power to outlaw the union shop; that the "agency shop" involved in the instant case was the legal equivalent of a union shop, and hence Nevada had the power to outlaw it; that the Nevada statute, although it, like § 8(a) (3) and § 14(b) of the National Labor Relations Act, is couched in terms of "membership" in unions, should, like those provisions of the Federal Act, be interpreted as applying to situations such as the instant one, not involving compulsory membership, but involving its legal equivalent, compulsory payment of union charges.

The union has appealed from the district court's decision. In its original brief and at oral argument it urged (1) that § 14(b) of the National Labor Relations Act does not give to the states the option to outlaw agency shop agreements and (2) even if § 14(b) did give Nevada such an option, Nevada's statute, properly interpreted, does not outlaw agency shop agreements.

At the time of the oral argument in this case two cases were pending before the Supreme Court of the United States the decisions in which, it seemed, would be of importance in the consideration of the instant case. It was agreed that when those decisions came down, the parties would submit supplemental briefs. The Supreme Court decisions were issued on June 3, 1963, and the promised supplemental briefs have been submitted. The two cases are National Labor Relations Board v. General Motors Corporation, 83 S.Ct. 1453, and Retail Clerks International Association, Local 1625, AFL-CIO, et al. v. Schermerhorn, 83 S.Ct. 1461.

In General Motors, the union had requested negotiation about an agreement for an agency shop. General Motors refused even to discuss the question, taking the position that the proviso in § 8(a) (3) of the NLRA expressly sanctioning a union shop, did not sanction this agency shop variation of the sanctioned union shop, hence such an agreement if made would be a violation of § 8(a) (3), hence it would not be a lawful subject to bargain about. The National Labor Relations Board, 133 NLRB 451, held that General Motors had unjustifiably refused to bargain, and ordered it to bargain. The United States Court of Appeals for the Sixth Circuit, 303 F.2d 428, disagreed with the Board and refused to enforce its order to bargain. The Supreme Court of the United States, in its June 3, 1963 decision, supra, reversed the Court of Appeals. It adopted the Labor Board's view that if Congress in § 8(a) (3) sanctioned the union shop, it must have also intended to sanction "less vigorous, less compulsory contracts which demanded less adherence to the Union." The Supreme Court said that the proviso in § 8(a) (3), while it spoke of "membership," actually, by reason of its provision that an employee could not be discharged, under a union shop agreement, if he tendered his initiation fees and dues, even though he was denied membership in the union, meant to authorize not only a union shop but any less compulsory variation of such an arrangement. The Court said that although Congress authorized the parties to a labor agreement to make membership in the union a condition of continued employment, it "whittled down" the meaning of membership to "its financial core," by the language of § 8(a) (3).

Perhaps it could be said that since the closed shop was the evil which Congress sought to forbid, and since Congress regarded the union shop as sufficiently different from the closed shop to be expressly permitted, then, *a fortiori*, the agency shop which differed from the closed shop in the same general manner as the union shop differed, but differed in a greater degree, would also be permitted. So far, then, as § 8(a) (3) is concerned, the agency shop is lawful.

The Schermerhorn case, supra, raised the question of the legality of the agency shop in the state of Florida, a state which had a "right to work" statute. That

brought § 14(b) of the federal act, quoted supra, into the case. In § 14(b) Congress authorizes each state, at its option, to forbid any sort of an agreement requiring union membership as a condition of employment. Florida had such a statute. Food Fair Stores, having a chain of stores in Florida, made an agency shop agreement with the union of its employees. Non-union employees of the employer brought suit in a Florida court to enjoin the union and the employer from enforcing the agreement against them, the non-union employees, by requiring them to pay the union initiation fees and dues or suffer discharge. The defendants contended that since the contract did not require "membership" in the union, § 14(b) which is written in terms of membership, did not apply, and hence § 14(b) did not authorize the state to forbid this kind of a contract, which was, in fact, an agency shop contract.

The Supreme Court of Florida held that the Florida right to work law made the contract illegal and that its enforcement should have been enjoined. The Supreme Court of the United States agreed that the contract was illegal. It said that its decision in General Motors, supra, ruled the Schermerhorn case. It said that the agreements requiring "membership" which are expressly permitted by the § 8(a) (3) proviso are the same "membership" agreements which § 14(b) expressly permits the states to prohibit. It might be suggested, with deference, that there is a measure of *non sequitur* in the syllogism. The essence of General Motors might be that if the contract in question is *as* different, or *more* different from a closed shop contract than a union shop contract is, it is not forbidden by § 8(a) (3). That would not necessarily mean that a contract which had in it any element, however slight, of union encouragement by an employer could be outlawed by a state. The fact that a union shop, as well as any arrangement less compulsory than that, is made federally lawful by the proviso of § 8(a) (3) does not logically mean that all that large area, left open to the bargaining of the parties by § 8(a) (3) may be closed by a state under the power given it by § 14(b).

Schermerhorn held that Florida could, by its right to work law, make the agency shop illegal. That raised, in that case, the pre-emption question. Since the employer and the union were applying compulsions, not permitted by law, against the plaintiff employees, to require them to pay money to the union, the court deferred the question whether the remedy had to be sought from the National Labor Relations Board or could be had in the Florida courts, for reargument during the forthcoming term.

■ As to the case before us, it is now settled by Schermerhorn that Nevada has the power, under § 14(b) to outlaw an agency shop such as the one here in litigation. The only remaining question is whether Nevada has done so. Its "Right to Work" statute is NRS 613.230 to 613.300. Section 613.250 provides:

"No person shall be denied the opportunity to obtain or retain employment because of nonmembership in a labor organization, nor shall the state, or any subdivision thereof or any corporation, individual or association of any kind enter into any agreement, written or oral, which excludes any person from employment or continuation of employment because of nonmembership in a labor organization."

It will be observed that the quoted section speaks of "nonmembership" in a labor organization. Here, then, as in §§ 8(a) (3) and 14(b) of the federal statute, is a question of construction of statutory language. The construction which the courts of Nevada place upon the statute will, of course, be decisive. But the language has not yet been construed by a Nevada court.

The Attorney General of Nevada on July 11, 1952, Opinion No. 184, gave an opinion that the right to work law, then recently enacted, did not outlaw the agency shop. A subsequent Attorney General, in 1958 was of the contrary

opinion. Attorney General's Opinion No. 407, September 22, 1958. The latter opinion was relied on by the district court, which cited several decisions of the Supreme Court of Nevada holding that Nevada courts will give weight to a construction of a statute by the executive department. The district court also pointed out that early in 1959 the Nevada legislature defeated by a heavy majority a bill which would have made lawful an agreement for a union shop. The district court found it "difficult to believe" that the legislature was not aware of the construction which had so recently been placed upon the statute by the Attorney General, and therefore thought that its failure to amend the statute to reverse that construction had some significance.

The district court then considered authorities from other states having right to work laws couched, like the Nevada statute, in terms of "membership" in unions. It cited Higgins v. Cardinal Mfg. Co., 188 Kan. 11, 360 P.2d 456 and the (Arizona) trial court's decision in Arizona Flame Restaurant, Inc. v. Baldwin, 34 LRRM 2707, 2709 which was affirmed and modified by the Supreme Court of Arizona, 82 Ariz. 385, 313 P.2d 759, that court finding it unnecessary to reach the question of whether the agency shop was unlawful under the Arizona statute. It cited the opinion of the Attorney General of Texas. The foregoing authorities were to the effect that agency shops were outlawed by state right to work laws couched in terms of membership. Since the district court's decision, the Schermerhorn case in Florida, Fla., 141 So.2d 269, is to the same effect. The district court cited to the contrary, Meade Electric Co. v. Hagberg, 129 Ind. App. 631, 159 N.E.2d 408, but noted that the Indiana statute there involved was a penal statute which, for that reason, had to be strictly construed.

The June 3, 1963 decisions of the Supreme Court of the United States in General Motors and in Schermerhorn seem to us to be of significance on our question of construction of the Nevada statute. In those cases, the Supreme Court construed § 8(a) (3) and 14(b) of the federal statute, each section being written in terms of "membership," as including agency shop provisions which did not require membership, but only the payment of union charges. Those decisions were unanimous, except that Mr. Justice Goldberg took no part in them. They seem to indicate that the interpretation which the district court in our case, and the state courts and attorneys general in the other cases which took the same view, is the natural and logical interpretation of the language in question. Then, too, we recognize that the able and distinguished district judge who decided this case would have a more dependable intuition than this court would have, as to how the courts of Nevada will decide the question when the opportunity arises.

The appellant union, in its supplemental brief, states its view that the pre-emption question which the Supreme Court of the United States reserved for further consideration in the Schermerhorn case, supra, is not a problem in this case, since one of the parties to the questioned agreement has brought this suit to enforce the agreement. We think this view of the appellant is correct.

The judgment of the district court is affirmed.