W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Washington, District of Columbia, Plaintiff,

v.

LOCAL UNION 169, INTERNATIONAL HOD CARRIERS', BUILDING AND COMMON LABORERS' UNION OF AMERICA, AFL–CIO, an Unincorporated Association, Reno, Nevada, Defendant.

International Hod Carriers' Building Common Laborers' Union of America, AFL–CIO, Intervenor.

Civ. No. 1660.

United States District Court D. Nevada.

Oct. 19, 1965.

See also D.C., 37 F.R.D. 349.

Charles Donahue, Sol., James R. Beaird, Associate Sol., Altero D'Agostini, Regional Attorney, Norman S. Neyfach, Deputy Regional Attorney, U. S. Department of Labor, Washington, D. C., John W. Bonner, U. S. Atty., Las Vegas, Nev., Merlyn H. Hoyt, Asst. U. S. Atty., Reno, Nev., for plaintiff.

Charles P. Scully, Donald C. Carroll, San Francisco, Cal., Marshall Bouvier, Reno, Nev., Robert J. Connerton, Washington, D. C., General Counsel, I. H. C., B. & C. L. U. of A., AFL–CIO, for defendants.

THOMPSON, District Judge.

This action duly came on for trial before the Court sitting without a jury at Reno, Nevada, on October 11, 12 and 13, 1965. Plaintiff was represented by Norman S. Neyfach, of the Office of the Regional Attorney, United States Department of Labor. Defendant Local Union 169 was represented by Charles P. Scully, Donald C. Carroll and Marshall A. Bouvier.

At the commencement of the trial, International Hod Carriers' Building Common Laborers' Union of America, AFL–CIO, moved to intervene as a party defendant adopting the actions herein of defendant Local Union, and an order was entered granting the motion on stipulation of counsel. The International Union was represented by Robert J. Connerton and Marshall A. Bouvier.

Evidence was received on behalf of the respective parties and the case was submitted for decision upon the Pre-Trial Conference Order, the evidence, and the arguments of counsel.

This is an action to set aside as invalid the election of officers conducted by defendant Local Union on June 15, 1963, and to direct the conduct of an election under the supervision of the Secretary of Labor, United States Department of Labor, and in accordance with the provisions of Title 4 of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. §§ 481–483), and in conformity with defendant's Constitution and By-Laws insofar as they are not inconsistent with the provisions of the Act. This Court has jurisdiction by virtue of Section 402(b), Title 29, United States Code.

The Court finds the following facts to be true:

FINDINGS OF FACT

1. Defendant Local Union is, and at all times relevant to this action has been, an unincorporated association maintaining its principal office at 290 North Arlington Avenue, Reno, Nevada, within the jurisdiction of this Court. Defendant Local Union is, and at all times rele-

vant to this action has been, a labor organization engaged in an industry affecting commerce within the meaning of Sections 3(i) and 3(j) of the Act [29 U.S.C. § 402(i) and (j)].

2. Defendant Local Union is, and at all times relevant to this action has been, a local labor organization chartered by its parent body, defendant and Intervenor, International Hod Carriers' Building Common Laborers' Union of America, AFL–CIO, Washington, D. C., hereinafter referred to as the International Union, an international organization within the meaning of Section 3(i) of the Act, 29 U.S.C. § 402(i). Defendant Local Union is subject in its organization and internal procedures to the provisions of the International Union Constitution of its parent body and to the Uniform Local Union Constitution, and to the lawful orders, decisions and interpretations, rules and regulations promulgated in pursuance thereof by the General President and General Executive Board of the International Union.

3. Officers of the Local Union are elected every three years. Conformably with the Constitution and By-Laws, a special nomination meeting was called to be held on May 9, 1963 for the purpose of nomination of candidates for office, qualification of candidates, designation of judges of election and establishment of certain election procedures. At the regular monthly meeting on May 23, 1963, the membership voted to hold the election on Saturday, June 15, 1963 at the Labor Temple, 290 North Arlington Avenue, Reno, Nevada, the polls to be open from eight a. m. to eight p. m. Any member desiring to vote was required to appear personally at the polling place to cast his ballot.

4. On May 31, 1963, the Secretary of the Local Union mailed notices of the election to the members in good standing. Notice of the election was not mailed to thirty members of the Local Union who were qualified and entitled to vote.

5. Between May 31, 1963 and June 15, 1963, the Secretary of the Local Union furnished to the candidates for office a list of names and addresses of the members of the Local Union. The list was furnished without discrimination to all candidates who requested it. The list of names was inaccurate and incomplete in that there was omitted therefrom the names and addresses of fifty-two members of the Local Union who were qualified and eligible to vote.

6. At the election held on June 15, 1963, the candidates and voting results were as follows:

President

| | | | |
|---|---|---|---|
| Frank Conrad | 82 | | E |
| John Newman | 34 | | |
| Ted Tobias, Jr. | 36 | 46(S) | |

Vice President

| | | | |
|---|---|---|---|
| Dick Van Dyke | 102 | | E |

Recording Secretary

| | | | |
|---|---|---|---|
| Louis Paley | 57 | 37(S) | |
| Charles Burke | 94 | | E |

Secretary-Treasurer

| | | | |
|---|---|---|---|
| Charles Carter | 48 | | |
| Elmo Recanzone | 57 | | E |
| Joe Strenkoski | 48 | 9(S) | |

Business Representative

| | | | |
|---|---|---|---|
| Don Gurd | 95 | | E |
| Elmer Matthews | 53 | 42(S) | |

Sergeant-at-Arms

| | | | |
|---|---|---|---|
| Bill Courtney | 90 | | E |
| Bill Maine | 36 | 54(S) | |

Auditors

| | | |
|---|---|---|
| A. T. Dilworth | 76 | E |
| John Hightower | 77 | E |
| Bert McGuire | 96 | E |

Executive Board

| | | |
|---|---|---|
| Ralph Blackburn | 95 | E |
| Manuel Ortiz | 90 | E |

(E — Elected)

(S — Spread)

7. Article XX, Section 5, of the International Union Constitution provides that a member shall, upon transferring from another local "become a member of the Local Union to which he has trans-

ferred and entitled to all rights and privileges of a member, except that he shall not have the right to vote until he has been a member thereof for three months * * *." Defendant interpreted this "three-months rule" as applying also to newly initiated members and re-admitted members who had paid up their arrears.

8. Six members of the Local Union who appeared at the polls to vote, including Everett G. Hail, were improperly declared ineligible to vote by the election committee and were not permitted to vote because of the aforesaid unintentionally erroneous interpretation of the Constitution.

9. There were 512 members of the Local Union on June 15, 1963 who were qualified to vote. Of these members, 426 lived in the Reno-Sparks, Carson City, Lake Tahoe area within approximately fifty miles of the polling place; 26 members lived in Fallon, Nevada, approximately 60 miles from the polling place; 34 members lived in Northern Nevada distant approximately 80 to 350 miles from the polling place; 14 members listed addresses in California; and 12 members listed addresses at miscellaneous places outside California and Nevada. Only two members who had mailing addresses on defendant's records on June 15, 1963 of more than eighty miles by highway from Reno, Nevada, voted at the election. The jurisdiction of Local Union 169 includes the following Counties in Nevada:

| | |
|---|---|
| Washoe | Eureka |
| Humboldt | White Pine |
| Pershing | Elko |
| Douglas | Story |
| Ormsby | Churchill |
| Mineral | Lyon |
| Lander | Nye (North of Hwy 6 except the Town of Tonopah) |

10. On or about June 24, 1963, Everett G. Hail, a member of the Local Union who was not permitted to vote, entered his protest and appeal to the International Union (Exhibit B), as follows:

"On June 15th, 1963 the International Laborers Local #169 of Reno, Nevada, held an election for new officers. Being a member in good standing, I reported to the Labor Hall located at 290 N. Arlington Ave. Reno, Nevada. I tried to cast and exercise my right to vote, but was denied such action. This is in direct violation not only of our International Constitution, but also violates procedure of the Landrum-Griffin Act. Therefore I wish to challenge the validity of this election."

A copy of the letter was sent to the San Francisco Regional Office of the National Labor Relations Board.

On June 25, 1963, A. T. Tobias, Jr., a member of the Local Union and a candidate for the office of President at the contested election, entered his protest and appeal to the International Union (Exhibit C), as follows:

"I wish to submit a protest, challenge and question the election of officers that was held on June 15, 1963, in Reno, Nevada of Local #169 Laborers' & Hod Carriers' Union. I question it on the following facts:

"1. At the meeting of judges after nomination night I was charged with crossing a picket line by one of the judges, so I was considered ineligible. After an investigation it was found to be an untrue fact. In my opinion this tends to show discrimination, because there was a candidate who held the office of Secretary Treasurer who was forced to resign for crossing a picket line not on union business. Yet not one word was mentioned to the members by the qualifying board. I feel that by bringing this matter up it left doubt towards me in the minds of the members if I was guilty or not, because it was not explained thoroughly.

"2. The list of eligible members for campaign purposes who were

supposed to be permitted to vote was incomplete. According to the Secretary Treasurer our local has 650 members. But the list only contained 420 names.

"3. Some of the members whose names appeared on the list were denied their constitutional right to cast their vote for the candidate of their choice, and members whose name did not appear on the list were permitted to vote.

"These are direct violations not only of our International Constitution but also of the Landrum-Griffin Act."

A copy of this letter was sent to the Director, National Labor Relations Board, and was by that office transmitted to the San Francisco Area Office of Labor-Management & Welfare Pension Reporters, United States Department of Labor. The General Secretary of the International Union acknowledged both protests and appeals and both of them were scheduled for hearing at ten o'clock a. m. on July 25, 1963 at San Francisco, California. Both protestants were invited to be present or to forward by mail any information or evidence relating to their protests and appeals.

The International Union also notified the Local Union (Exhibit G) of the time and place of the hearing and requested the Local Union to forward the following information:

"(1) Copy of the notice of nomination meeting.

"(2) Copy of the minutes of the nomination meeting.

"(3) Copy of a written report of the Judges of Election on the qualification or disqualification of the candidates nominated.

"(4) The minutes of the meeting at which the Judges of Election reported on the qualification or disqualification of the candidates nominated.

"(5) Copy of the official ballot if a ballot was used and a statement as to the number of ballots printed.

"(6) If voting machines were used, a roster of the candidates and the office for which they were nominated.

"(7) Copy of the notice of election sent to all members in good standing.

"(8) Documents, if any, which would indicate that steps were taken to insure a fair nomination and election and compliance with the Constitution and federal laws regarding the nomination and election of officers.

"(9) Copy of the official election results as certified to by the Judges of Election.

"(10) Copy of the final report of the Judges of Election to the membership meeting following the election and a copy of the minutes of said meeting at which they made their report to the membership.

"(11) A statement as to the position of your Local Union in reply to the position taken by the appellant, in addition to any and all written data or documents that you may wish to submit to the Board for consideration in connection with this matter.

"The above requested information and documents are necessary to the proper adjudication of this appeal and we must receive the same in sufficient time to prepare the entire file for submission to the Hearings Panel. In the absence of such requested information and documents, the hearing will proceed without same.

"After the hearings have been concluded, the Hearings Panel will prepare Findings of Fact and Recommendations for submission to the General Executive Board as a whole, after which the said Board will make its final decision. When a decision has been made, the General

Secretary-Treasurer will advise all concerned by mailing a notice thereof."

11. Neither Hail nor Tobias appeared at the hearing or submitted any additional information. Don Gurd, Business Representative of the Local Union, appeared for the Local Union. The two appeals were consolidated for the purpose of hearing and report to the General Executive Board. On August 29, 1963, Everett G. Hail received the letter-decision of the General Executive Board of the International Union which stated:

" 'Everett Hail, Local Union 169, Reno, Nevada under date of June 24, 1963 and A. T. Tobias, Jr., Local Union 169, Reno, Nevada, on June 25, 1963, protest the election conducted by the Local Union on June 15, 1963.

" 'The following is the report of the Hearings Panel in this matter:

" 'Appearances: Local Union: Don Gurd, Business Representative Appellants: None

" 'Because of the similarity of the subject matter involved in both appeals, the two appeals were consolidated by the Panel for the purpose of hearing and report thereon to the General Executive Board.

" 'In this matter, appellant Hail contends that he was improperly disqualified from voting; that as a result the election should be set aside.

" 'Appellant Tobias contends that because he was required to appear before the Judges of Election to answer with respect to information as to his qualifications as a candidate for office, that the members may have had a doubt in their mind with respect to his qualifications and that the election should be set aside.

" 'The Panel has reviewed the entire record in this matter and

"FINDS:

"1. The Judges of Election would not permit appellant Hail to vote

because of his being readmitted under date of April 26, 1963.

"2. That the Judges erroneously misinterpreted the Uniform Local Union Constitution, with respect to two members, one of which was appellant Hail, believing that they would not be entitled to vote for three months after their readmission.

"3. That this unintentional violation by the Judges of Election with respect to denying two members their right to vote could not have affected the outcome of the election.

"4. That appellant Tobias was nominated as candidate for the office of President.

"5. That the Judges of Election, in inquiring into the qualifications of appellant Tobias, investigated alleged derogatory information furnished them.

"6. That this investigation revealed that this information was incorrect and that they qualified appellant Tobias as a condidate for the office of President and so reported to the membership of the Local Union at the meeting of May 23, 1963.

"7. That the action of the Judges of Election on this matter were entirely proper.

"8. That the election of the Local Union was conducted in accordance with the provisions of the Uniform Local Union Constitution.

" 'Accordingly, therefore, the Panel

"RECOMMENDS: That the appeals be denied.'

" 'After due deliberation, it is

"VOTED: That the report of the Panel be approved and that the Findings and Recommendation be and the same hereby are adopted."

12. On September 26, 1963, Everett G. Hail deposited in the United States Post Office at Reno, Nevada a letter ad-

dressed to the Secretary of Labor, Mr. Willard Wirtz, Washington, D. C., alleging that he and twelve other members of defendant Local Union were denied the right to vote in violation of the Constitution and the Labor-Management Reporting and Disclosure Act of 1959. In the regular course of the mails and under normal conditions, such letter would have been received at the Department of Labor Building, Washington, D. C. on the afternoon of Sunday, September 29, 1963. Conditions with respect to the transmission and delivery of mail on the days in question were normal. The Department of Labor Building and the offices therein were closed for regular business on Saturday, September 28, 1963 and Sunday, September 29, 1963. One mail delivery, sacked in bulk, was made by the Post Office Department to the Department of Labor Building on Sunday afternoon, and there held for sorting and distribution on Monday morning. Hail's letter dated September 26, 1963 was sorted and distributed to and received by the clerk in the file room, Room 2408, of the Secretary of Labor on Monday, September 30, 1963.

13. After receipt of a copy of Tobias' protest and appeal to the International Union in July, 1963, the Area Director of the Bureau of Labor-Management Reports, Department of Labor, on July 15, 1963, wrote Mr. Tobias acknowledging receipt of the letter, informing him of the need to exhaust administrative remedies and sending him a copy of a Labor Department pamphlet dated in June, 1963 entitled "Electing Union Officers." On August 15, 1963, the Area Director telephoned Mr. Tobias inquiring regarding the status of his appeal. On August 29, 1963, Mr. Testi, a Compliance Officer of the Department of Labor, initiated a conference with Mr. Tobias and Mr. Manuel Garcia at Reno, Nevada regarding the denial of Tobias' appeal by the Executive Board of the International Union, Mr. Tobias having that day received a letter from the International Union similar to the one received by Mr. Hail. Manuel Garcia

was a member of the Local Union, a watcher at the polls for two of the candidates, and had assisted Tobias and Hail in preparing their appeals to the General Executive Board. Twice in September, 1963, an agent of the Department of Labor communicated or attempted to communicate with Mr. Tobias to determine whether he had sent a letter to the Secretary of Labor protesting the election. Garcia also assisted Hail in the preparation of his letter-complaint dated September 26, 1963 to the Secretary of Labor. Hail was connected with Tobias through their common advisor, Manuel Garcia. No employee of the Department of Labor had any direct communication with Hail before his complaint was sent to the Secretary of Labor. Agents of the Department of Labor communicated with Tobias, as stated, for the purpose of advising him regarding his rights under the Labor-Management Reporting and Disclosure Act of 1959 and of assuring timeliness of a complaint to the Secretary if Tobias should decide to file such complaint. Tobias did not file a complaint with the Secretary of Labor.

## CONCLUSIONS OF LAW

The Court's Conclusions of Law are stated in the following Opinion. Insofar as they may be considered findings of fact and insofar as facts are stated in the Opinion which are not included in the foregoing Findings of Fact, the Court finds them to be true in all respects.

## OPINION

Plaintiff prays that the election be declared void upon the grounds:

1. That defeated candidates were furnished with a substantially inaccurate list of members and addresses.

2. That no notice of election was mailed to thirty eligible members.

3. That six members who appeared at the polls were improperly denied the right to vote; and that others who lived at substantial distances from the polling place were denied the right to vote be-

cause additional polling places or absentee balloting by mail were not provided.

4. The accumulation of irregularities may have affected the outcome of the election.

Defendants oppose relief upon the grounds:

1. The Department of Labor and this Court have no jurisdiction because Hail's complaint to the Department of Labor was not timely filed.

2. Hail did not exhaust his administrative remedies in that (a) he made no protest to the International Union of the deprivation of anyone's right to vote, other than his own; (b) he made no protest to the International Union concerning failure to mail election notices to all eligible members; (c) he made no protest to the International Union respecting failure to provide for multiple polling places or absentee voting; and (d) he made no protest to the International Union regarding discrimination with respect to or improper use of lists of members' names and addresses.

3. The Department of Labor unlawfully solicited Hail's complaint.

4. There were no substantial irregularities in the election procedure and any insignificant irregularities proved could not have affected the outcome of the election.

I

The Complaint with the Secretary of Labor was timely filed. The law [29 U.S.C. § 482(a)] authorized Hail to "file a complaint with the Secretary within one calendar month."

▉▉▉ "The use of the word 'file' or 'filing' in a legal sense is almost universally held to mean the delivery of the paper or document in question to the proper officer and its receipt by him to be kept on file." Creasy v. United States, 4 F.Supp. 175; Weaver v. United States (4 CCA 1934), 72 F.2d 20. A document is not filed when it is deposited in the mails and the risk of loss or delay in transit is on the sender. "Filing" does not import, however, that the Secretary of Labor himself had to receive the letter personally for it to be filed. The preponderance of the evidence shows that Hail's letter was received at the Department of Labor Building, Washington, D. C. with the mail delivery on the afternoon of Sunday, September 29, 1963, and was there received into the custody of an employee of the Department of Labor in the mail room. It was then filed within the intendment of the statute and the sender does not bear the risk of delay in its handling by clerical employees of the Department or inattention given it on a non-working day. Palcar Real Estate Co. v. C.I.R. (8 CCA 1942) 131 F.2d 210.[1] Hail's letter was physically received by the mail distribution clerk for the Department of Labor on September 30, 1963, and she dated the routing slip which she attached to it accordingly. If this should be deemed the first filing with the Secretary of Labor, the complaint still would have been timely filed. The last day to file fell on Sunday and it is the general rule that when the last day of a period of time within which an act is to be done falls on Sunday, that day is excluded from the computation and the act may rightfully be done on the following secular or business day. 86 C.J.S. Time § 14(1), p. 880; 52 Am.Jur. § 344. Rule 6 of the Federal Rules of Civil Procedure, recognizing the advent of the five-day week, excludes Saturdays, Sundays and legal holidays

[1]. "On these facts, the petition for review must be regarded as having been legally filed when it was delivered to the mailing room where the Board's mail was intended to be regularly received, and was deposited on the desk there at 1:14 P.M. on Saturday, November 29, 1941. Petitioner's right to a review will not be permitted to be defeated by the mere incident that there was no one present in the mailing room to receive the paper or that it was not handled by the Board's employees until December 1, 1941, since these were fortuitous circumstances over which petitioner had no possible control. Compare McCord v. Commissioner, 74 App.D.C. 369, 123 F.2d 164."

in computing a period of time which ends on such a day, and has been adopted as applicable to time computations. Wirtz v. Local Union 611 (D.C.Conn.1964), 229 F.Supp. 230; Union National Bank v. Lamb (1949), 337 U.S. 38, 69 S.Ct. 911, 93 L.Ed. 1190. We have found nothing in the Administrative Procedure Act or in the regulations of the Labor Department which expressly adopts this method of computing time. Congress could clarify the situation by adopting a general statute for time computation governing all filings and procedures in administrative agencies. In the absence of such a statutory definition, the Courts should declare and apply the modern common law, recognizing that in judicial and quasi-judicial or administrative proceedings, it is commonly understood that when the last day to perform an act falls on a non-business day, the time is extended to the next regular business day.

## II

On the question of exhaustion of remedies, plaintiff contends that the filing of a complaint with the Secretary of Labor by a union member opens to investigation and court challenge all violations of the Act occurring in the conduct of the election. Defendants counter that to give any meaning to the requirement of exhaustion of remedies, the Secretary must be restricted to investigation of the specific violation alleged by the member in his appeal to the International Union (in this instance, that Hail had been improperly denied the right to vote).

The Act, 29 U.S.C. § 482(a), specifically requires the exhaustion of remedies in the union before a complaint may be filed with the Secretary. The union constitution requires a specification of er-

ror by the union member in his appeal to the International Union.[2] Here, the Secretary's complaint to the Court has greatly expanded the bases for protest. Defendants say they have been given no opportunity to clean their own house inasmuch as Hail did not exhaust internal remedies with respect to the issues before the Court. We think Chief Judge Connell, in his opinion in Wirtz v. Local Union No. 125 (N.D.Ohio, 1964), 231 F.Supp. 590, has convincingly elucidated the history of the requirement that internal union remedies be exhausted and the conclusion that it is not a subject for judicial emasculation. The breadth of the Secretary's power to investigate union elections as distinguished from the statutory limitations on his power to initiate court action to vacate an election is discussed in Wirtz v. Local 191 (2 CCA 1963), 321 F.2d 445.

We think the express statutory requirement of exhaustion of internal union remedies must be given effect. We do not, however, believe that it is the intention of the Act to restrict the Secretary's action to the precise complaints asserted by the union member who filed the letter-complaint with the Secretary. The act should receive a practical interpretation governed by common sense and realities. If Congress intended that the union member assert a lawyer-like protest to the Executive Board, covering all the bases by specific averment, and buttressed by evidence of all irregularities in the election, there would be no occasion for an evidentiary investigation by the Secretary. Such an interpretation restricts the Act to a definition of remedies and establishment of jurisdiction in this Court for the vindication of essentially private rights, and de-emphasizes to the point of emasculation the public interest which prompted

---

2. Art. XII, Sec. 8: "The matter of conduct of nomination or election of Local Union officers, officials and delegates is not within the jurisdiction of the Local Union Trial Board.

"Any person aggrieved with the nomination process must appeal directly to the General Executive Board prior to the holding of the election. Any person aggrieved with the conduct of election must protest directly to the General Executive Board within thirty days after the election. All such protests must clearly and specifically set forth the grounds upon which the appellant shall rely."

Congress. Other courts have always been open to the union member for the protection and enforcement of the private contractual rights created by his union membership under the Constitution and By-Laws of the union.

The act should be construed to mean that the Secretary has, on complaint of a union member, the right to investigate all aspects of the contested election and to base a complaint to the Court on every issue which the defendant union had a fair opportunity to consider and resolve in connection with any member's appeal to the General Executive Board of the union. The Secretary should not be limited to the ground asserted by the one member who complained to the Secretary. Such an approach will preserve the union's first right to correct its own procedures and will help to avoid the intolerable situation which will result if the union is permitted to treat the separate complaint of each appealing member as an isolated "case" filed for vindication of the personal rights of the member and without regard for the public interest asserted by the Labor-Management Reporting and Disclosure Act of 1959. For example, in this case, the Secretary is not limited to the grounds asserted by member Hail but may also rely upon any grounds asserted by member Tobias who also protested the election to the General Executive Board and whose complaints were subjected to its administrative scrutiny. The whole tenor of the Labor-Management Reporting and Disclosure Act and related federal laws affecting labor-management relations is that labor organizations are affected with a public interest. This concept inherent in the Act cannot be attained if each investigation and court action by the Secretary is dealt with as a common law pleading for the vindication of the private contractual rights of the union member.

We think that when a union member appeals an election, the appeal inherently, whether expressed by the member's letter or not, involves the procedural requisites of a legal election, in-

cluding a fifteen day election notice to each member mailed at his last known home address [29 U.S.C. 481(e)] and an election by secret ballot [29 U.S.C. 481(b)]. This defendant International Union inferredly would not disagree, in practice, for the information it required from the Local Union (Exhibit G, Finding 10) covered all essentials of a legal election and went considerably beyond the specifications of members Tobias and Hail. Note the requirement to submit "(7) Copy of the notice of election sent to *all* members in good standing" (underlining added), and "(8) Documents, if any, which would indicate that steps were taken to insure a fair nomination and election and compliance with the Constitution and federal laws regarding the nomination and election of officers."

A legal notice of election is too fundamental a requirement to be made dependent on a private complaint to put it in issue when the election is being contested. Evidence concerning proper compliance with the specific command of the statute and union constitution that notice of election be mailed to each member at his last known address normally would be available only to the incumbent union officers. In this case, the proved inaccuracies in the membership lists prepared by the union officials, including an omission of seventy-eight names from the campaign lists furnished the candidates and an omission of fifty-two names from the "Voting Register" used at the polls, suggests that the failure to send election notices to thirty members was the consequence of gross neglect in the maintenance of proper records and cannot be justified as an accidental mistake occurring in the exercise of due care. The issue of failure to send notices of election to all members is properly in the Secretary's action and was properly before the General Executive Board of the International Union.

The General Executive Board, on an appeal, must also, we believe, to effectuate the spirit of the Act, consider the subject matter of the appeal in a broad application with reference to the

validity of the election rather than as an effort by an individual member to preserve his own right to vote. Member Hail complained of the deprivation of his own right to vote because of a wrong interpretation by the election board of the union constitution. The board found that two members were thus improperly rejected at the polls. It should have found six. This subject matter was properly before the Board and should have been reviewed with respect to all rejected electors, not just the particular complainant.

The appeal of member Tobias also put in issue the correctness of the campaign lists supplied to candidates.

The only issue not presented by the appeals to exhaust internal remedies, as we analyze the evidence, is the present claim by the Secretary that members residing at a distance were not given a reasonable opportunity to vote because alternate polling places close to their homes or mail ballots were not provided. As to this claim, the statutory predicate of exhaustion of union remedies has not been established and the Secretary cannot rely upon it as a basis for declaring the election void.

### III

The claim that the Local Union must have provided nearby polling places or mail ballots must also be rejected on the merits. It is based on the requirement of the Act [29 U.S.C. § 481(e)] that "Each member in good standing shall be entitled to one vote", and the Government relies upon Goldberg v. Marine Cooks and Stewards Union, 1962, N.D.Cal., 204 F.Supp. 844. The claim, in substance, is an attack on the validity of the provision of the union constitution requiring each member to appear personally at the polls to vote, as implemented by the arrangements made at the May meeting establishing one polling place at Reno, Nevada for the June 15, 1963 election. The issue, as we see it, is whether this voting arrangement under the circumstances of this particular local union, as shown by the evidence,

represents an unreasonable deprivation of the right to vote of a member residing in Eastern Nevada. We think the important considerations here are (1) that there are sound reasons why personal appearance at the polls may be preferred to a mail ballot in the protection of the secrecy of the ballot; (2) that the expense and complications of establishing separate polling places at diverse points must be weighed against the over-all benefits to be gained; (3) that it is not wholly impractical for a member of Local Union 169 to travel from any place within its jurisdiction to Reno, Nevada, to vote once every three years for union officers; (4) that only eleven and one-half percent of the members of this Local Union have mail addresses more than eighty miles from Reno; and (5) that Nevada is a so-called "Right to Work" State and union membership cannot be made a condition of employment in a collective bargaining agreement. N.R.S. §§ 613.230–613.300; Building Trades Council v. Bonito, 71 Nev. 84, 280 P.2d 295; Amalgamated Ass'n v. Las Vegas-Tonopah-Reno Stage Line, Inc. (D.Nev.1962), 202 F.Supp. 726; 319 F.2d 783; 29 U.S. C. § 164(b). A worker in Elko, Nevada, for example, who joins the union, does so freely and not under the same strength of economic compulsion as if the collective agreements did require union membership, and does so with knowledge that the seat of the union is in Reno where union elections have historically been held. The sum of these considerations persuades us that the union constitution, as implemented by the arrangements made for the June 15, 1963 election, is not so unreasonable as to constitute a deprivation of the right to vote of any member. This is not to say that it would not be reasonable to establish multiple polling places convenient to members living distant from Reno. In the first instance, however, this is a decision to be made by the local union.

Section 481(e), Title 29 United States Code, provides:

"The election shall be conducted in accordance with the constitution

and bylaws of such organization insofar as they are not inconsistent with the provisions of this subchapter."

Section 483, Title 29 United States Code, provides:

"No labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this subchapter."

The duty of the Court is to determine whether the election procedures, as prescribed, constitute an arbitrary and unreasonable deprivation of the right of any member to vote. Here, we cannot say that they do, and in so ruling, we do not disagree in the slightest with the decision in Goldberg v. Marine Cooks and Stewards Union, supra, involving a different union and an entirely different factual setting.

## IV

Defendants also contend that the Secretary of Labor solicited the filing of the complaint by the member, thus exceeding his investigative authority under both Section 601 and Section 402(b) of the Act. We see no merit to this defense. "Congress in its wisdom has concluded as it has in other areas, that to effectuate the policy of the law, the Government may become an active protagonist for private interests and thereby vindicate public rights." Mitchell v. Mitchell Truck Line, Inc. (5 CCA 1961), 286 F.2d 721.

## V

Having found no discrimination among candidates in the dissemination of the incomplete membership lists for their use in campaigning, and in view of our conclusions, as stated, on other aspects of the case, we are left with two violations to support an order for a new election: That six members who presented themselves at the polls were improperly denied the right to vote and that notices of election were not mailed to thirty qualified members. The Court cannot declare the election void unless it finds that the violations of Section 481, Title 29 United States Code, may have affected the outcome of the election. One hundred sixty-one members voted at the June 15, 1963 election. The closest race was for Secretary-Treasurer (Charles Carter, 48; Elmo Recanzone, 57; and Joe Strenkoski, 48), a spread of nine votes. In the election for Recording Secretary, there was a spread of 37 votes. It is obvious that the violations found might have affected the race for Secretary-Treasurer. We find nothing in the Act which authorizes breaking the election down into races for separate offices. An election conducted with violations of the Act which may have affected the outcome as to one office is void as a whole. A new election must be conducted under supervision of the Secretary, and, so far as lawful and practicable, in conformity with the Constitution and By-Laws of the Union.

An election is due to be held in 1966. In argument, the Government suggested that it does not desire to put the union to the expense of a new election of 1963–1966 officers if this can be avoided. Neither does the Court. It is suggested that within twenty days from date, the parties file a written stipulation that the Court may order the 1966 election of officers for the 1966–1969 three-year terms of office to be held under the supervision of the Secretary of Labor in lieu of compelling a new election for the remainder of the 1963–1966 terms of office. It is understood that by so stipulating, no party will have waived or abandoned any of its claims or defenses herein or any errors committed by the Court during the conduct of this action or its right of appellate review [29 U.S.C. § 482(d)].

The decree of this Court will be entered conformably with its findings and conclusions after the expiration of twenty days from date, the form thereof being dependent upon whether the suggested stipulation is filed.