INDEPENDENT GUARD ASSOCIATION, LOCAL NUMBER 1, APPELLANT, v. WACKENHUT SERVICES, INC., A FLORIDA CORPORATION, AND MORRIS T. RAGSDALE, RESPONDENTS.

No. 6966

May 29, 1974          522 P.2d 1010

*Larry C. Johns,* of Las Vegas, for Appellant.

*Deaner & Deaner* and *Jonathan C. Gibson,* of Las Vegas, for Respondent Morris T. Ragsdale; *Coulthard, Smith* and *O'Brien,* of Las Vegas, for Respondent Wackenhut Services, Inc.

*James Newton Wilhoit, III,* National Right to Work Legal Defense Foundation, 1900 L Street, N.W., Washington, D.C. and *Jack J. Pursel,* of Las Vegas, Amicus Curiae.

## OPINION

By the Court, BATJER, J.:

Appellant sought a declaratory judgment to determine whether its union-security "agency shop," agreement entered into on October 1, 1968 with the respondent, Wackenhut Services, Inc., was legal and binding, and whether it was enforceable or unenforceable. The district court found certain sections of the union-security agreement invalid and violative of Nevada's "right to work" law, NRS 613.230 through 613.-300, and denied appellant's request for relief. This appeal followed.

Prior to August 8, 1966, the respondent, Morris T. Ragsdale, was a member of the appellant union. During his union membership he signed the necessary documents authorizing as a periodic deduction from his wages a sum equal to the amount of his union dues.

Although Ragsdale resigned from the union on August 8, 1966, an amount equal to his union dues continued to be extracted from his wages pursuant to the agreement between appellant and the respondent, Wackenhut Services, Inc.

On October 1, 1968, the appellant union and respondent employer, Wackenhut, entered into a collective bargaining agreement. The pertinent clauses of that agreement provide: "3.4 The parties recognize that while the benefits of this Agreement will be extended to both members and non-members of the Association, the expense of negotiating this Agreement, as well as the continuing expense of enforcing its provisions and of processing claims and grievances hereunder, has been and will continue to be borne by the Association. For these reasons, the Company agrees that each employee covered by this Agreement who is not a member of the Association on or after the 30th day of his employment, shall be required to contribute to the Association a sum equal to current dues, excluding initiation fees and/or assessments."
"3.5 It is agreed that the Company will provide opportunity to the Association to explain this obligation to each new employee during the initial training period and to request dues deduction from wages in the appropriate amounts. However, no employee shall be discriminated against for refusal to sign such an authorization, but shall, in the event of refusal, be obligated personally to make such payment to the Association."

In February of 1971, Ragsdale refused to sign a renewal authorization for the salary deduction, and since that date no further sums have been subtracted from his earnings. Because Ragsdale refused to pay the equivalent of union dues, the appellant has requested that the respondent employer either terminate Ragsdale's employment, or forfeit his seniority rights.

NRS 613.250 provides: "No person shall be denied the opportunity to obtain or retain employment because of non-membership in a labor organization, or shall the state, or any subdivision thereof or any corporation, individual or association of any kind enter into any agreement, written or oral, which excludes any person from employment or continuation of employment because of nonmembership in a labor organization."

The National Labor Relations Act, § 8(a)(1) and (3), 29 U.S.C. § 158(a)(1) and (3), makes illegal an agreement under which an employer can neither hire nor keep in his employ, persons not members of the union, although it expressly permits an agreement requiring employees, after

the thirtieth day following their employment to become members of the union. However, the employer is forbidden to discharge an employee for nonmembership in the union if the union refused to admit him as a member for any reason other than a failure to tender the regular initiation fee and dues. In other words § 8(a)(3) forbids the closed shop but permits the "union shop."

The sanction of the union shop is qualified by § 14(b) of the Act, 29 U.S.C. 164(b), which says: "Nothing in this subchapter shall be construed as authorizing the execution or application of agreements requiring membership in a labor organization as a condition of employment in any State or Territory in which such execution or application is prohibited by State or Territorial Law."

The agreement involved here is within the scope of § 14(b). From its language, § 14(b) was designed to prevent other sections of the Act from completely extinguishing state power over certain union-security arrangements. By federal law, such arrangements are subject to their prohibition by the laws of a state.

An agency shop arrangement is the equivalent of a membership agreement permitted under § 8(a)(3), of the National Labor Relations Act, and § 14(b) subjects to state law the membership agreements or their equivalent, which are permitted by § 8(a)(3). Labor Board v. General Motors, 373 U.S. 734 (1963); Retail Clerks v. Schermerhorn, 373 U.S. 746 (1963).

In Labor Board v. General Motors, supra, the High Court held that the "agency shop" arrangement which imposes on employees the only membership obligation enforceable under § 8(a)(3) by discharge, namely the obligation to pay initiation fees and regular dues is the "practical equivalent" of "agreement requiring membership in a labor organization as a condition of employment." 373 U.S. at 743.

In Retail Clerks v. Schermerhorn, 375 U.S. 96 (1963), the union and the employer negotiated a collective bargaining agreement that contained an "agency shop" clause providing that the employees covered by the agreement who chose not to join the union were required to pay as a condition of employment an initial service fee and a monthly service fee to the union. Non-union employees brought suit in a Florida court to have the agency shop clause declared illegal, for an injunction against enforcement of it, and for an accounting. The Florida Supreme Court held that the negotiated and executed

union-security agreement violated the "right to work" provision of the Florida Constitution[1] and that the state courts have jurisdiction to afford a remedy. (See Schermerhorn v. Local 1625 of Retail Clerks Int. Ass'n., 141 So.2d 269 (1962).) The United States Supreme Court agreed with that view.

Before the *General Motors* case or the *Schermerhorn* cases were decided by the High Court, Judge John Ross in Amalgamated Ass'n. v. Las Vegas-Tonopah-Reno Stage Lines, 202 F.Supp. 726 (D.C.Nev. 1962), said: "Section 14(b) would be bereft of meaning if we were to construe it in a fashion which would render the states powerless to make illegal that type of union-security agreement which imposes liabilities on the workingman which, realistically, are the same liabilities which, under the section, the states may remove." 202 F.Supp. at 732.

In affirming Amalgamated Ass'n., Etc. v. Las Vegas-Tonopah-Reno Stage L., 319 F.2d 783 (9th Cir. 1963), that court said: "The June 3, 1963 decisions of the Supreme Court of the United States in *General Motors* and in *Schermerhorn* seem to us to be of significance on our question of construction of the Nevada statute. In those cases, the Supreme Court construed § 8(a)(3) and 14(b) of the federal statute, each section being written in terms of 'membership,' as including agency shop provisions which did not require membership, but only the payment of union charges. . . . They seem to indicate that the interpretation which the district court in our case, and the state courts and attorneys general in the other cases which took the same view, is the natural and logical interpretation of the language in question." 319 F.2d at 787.

Appellant's contention that there is nothing in the language of § 14(b) of the National Labor Relations Act that ‘even remotely infers that an agency shop clause in a union-security agreement is prohibited, misses the point completely.[2] That section subjects to state law the membership agreements or their equivalent which are permitted by § 8(a)(3) of the Act.

---

[1]Florida Constitution § 12 as of April 1963: "The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union, or labor organization; provided, that this clause shall not be construed to deny or abridge the right of employees by and through a labor organization or labor union to bargain collectively with their employer."

[2]The appellant relies heavily upon Meade Electric Company v. Hagberg, 159 N.E.2d 408 (Ind.App. 1959), where the Appellate Court of Indiana declared that its "right to work" law did not prohibit the agency shop. We cannot follow that case which was decided four years before

Our "right to work" law (NRS 613.250–NRS 613.300) declares that any agreement which excludes any person from employment or continuation of employment because of nonmembership in a labor union is illegal and void. The sections of the October 1, 1966 agreement between the appellant and Wackenhut are the equivalent of an agreement authorized by § 8(a)(3) of the National Labor Relations Act and subject to the laws of this state which have declared them to be illegal and void.

In Retail Clerks v. Schermerhorn, supra, the United States Supreme Court held that under 29 U.S.C. § 164(b), the states could prohibit union security-agreement and once having enacted such a prohibition the state courts could enforce the prohibitive measures.

Because an agreement to pay money to a labor organization in lieu of membership dues which is a condition of employment is the equivalent of an agreement which excludes persons from employment or continuation of employment based on nonmembership in a labor organization, the trial court correctly found the union security-agreement between appellant and Wackenhut violative of Nevada's right to work law, and invalid under NRS 613.300.

The judgment of the trial court is affirmed.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and ZENOFF, JJ., concur.

---

the United States Supreme Court construed § 8(a)(3) and 14(b) of the National Labor Relations Act in Labor Board v. General Motors Corp., supra, and Retail Clerks v. Schermerhorn, supra, and found that the terms of "membership" written in each section included agency shop provisions which did not require membership, but only the payment of union charges. Furthermore, Indiana's right to work law contained a penal provision. In *Hagberg,* the Indiana Court said: "The law is well settled that penal statutes will be strictly construed, and not construed to include anything beyond its letter, though within its spirit, and it cannot be enlarged by construction, implication or intendment beyond the fair meaning of the language used." 159 N.E.2d at 412. Nevada's "right to work" law in itself, NRS 613.230 to 613.300, does not contain any such penal provisions, only in NRS 613.130 which was first enacted in 1911, and amended in 1967, can a penal provision be found.