OPINION
 

 Per Curiam:
 

 SUMMARY
 

 This case presents an issue that we have not previously considered: whether it is an unfair labor practice for a union to charge
 
 *475
 
 nonunion members within its bargaining unit fees for individual representation in grievances, hearings, and arbitrations. Both the Employer Management Relations Board and the district court, in part, answered this question in the negative. We agree, and therefore affirm the order of the district court.
 

 STATEMENT OF THE FACTS
 

 The relevant facts in this case are not in dispute, as the parties have stipulated to them. Appellants, Annice Cone, Sharon Mallory, and Karl Schlepp (collectively hereinafter “appellants”), are nonunion employees of the University Medical Center of Southern Nevada (“UMC”), a local government employer pursuant to NRS 288.060. Appellants, as employees of UMC, are governed by a collective bargaining agreement (the “CBA”) and are members of a bargaining unit that is represented by Nevada Service Employees Union/SEIU Local 1107 (the “union”).
 

 In October 1994, approximately 100 union members, including the appellants in this case, exercised their rights under article 8, section 4 of the CBA to revoke their union dues authorization forms, thereby becoming nonunion members of the bargaining unit. During this same time period, in October 1994, the union disseminated a new Executive Board Policy (the “policy”), which is at issue in this case. The policy served two purposes: (1) to establish a fee schedule for all nonmembers of the union for representation in grievance matters; and (2) to notify nonunion members that they could select outside counsel to represent them in bargaining unit matters. The policy’s fee schedule provided that grievance consultation would cost a minimum of sixty dollars an hour, that the nonunion member was responsible for fifty percent of the billed fee for hearing officers and arbitrators, and one hundred percent of union attorney fees of up to two hundred dollars per hour.
 

 The policy was authorized by article 6, section 2 of the CBA, which provides that:
 

 The Union recognizes its responsibility as bargaining agent and agrees fairly to represent all employees in the bargaining unit. UMC recognizes the right of the Union to charge nonmembers of the Union a reasonable service fee for representation in appeals, grievances and hearings.
 

 It is undisputed that the policy was never actually enforced against any UMC nonunion employee, including appellants. However, because appellants believed that article 6, section 2 of the CBA and the policy violated the Local Government Employee-Management Relations Act (the “act”), appellants filed a complaint with the Local Government Employee-Management
 
 *476
 
 Relations Board (the “board”). In their complaint, filed on March 7, 1995, appellants alleged that the policy violated the act because it “interfered with, restrained, coerced and discriminated against the [appellants] (and all other employee[s] in the bargaining unit) in the exercise of their right, if they choose, to be nonmembers of the UNION, all in violation of NRS 288.140, 288.270(l)(a), 288.270(l)(c), 288.270(2)(a).”
 

 In response to appellants’ initial complaint, UMC, the board, and the union filed answers. Thereafter, the parties filed legal briefs, stipulated'to the facts, and agreed to let the board decide the issues in this case without a hearing.
 

 On January 10, 1996, the board issued a divided 2-1 decision. A majority of the board upheld the policy, concluding that it was not contrary to the provisions of NRS Chapter 288 or Nevada’s Right to Work Law (NRS 613.230-.300) and that, in the alternative, appellants had waived by inaction their right to object to such provisions. Further, the board concluded that the policy was neither coercive nor discriminatory in nature and did not derogate the union’s statutory duty as an exclusive bargaining agent to represent all UMC employees fairly and impartially.
 

 In contrast, the dissenter to the board’s decision concluded that the policy was invalid as a prohibited practice under NRS 288.270(2)(a) because it served to coerce nonunion employees into joining the union. Further, the dissent concluded that the policy was a prohibited practice because the union, as the exclusive bargaining agent for UMC employees, had a duty to represent all union and nonunion employees on a nondiscriminatory basis.
 

 Because appellants felt that the board erred in reaching this conclusion, appellants filed a petition for judicial review (the “petition”). The district court denied in part and granted in part
 
 [1]
 
 the petition, ruling that it was not arbitrary or capricious for the board to conclude that the policy was not discriminatory against nonunion employees or otherwise unlawful as interpreted.
 

 Believing that the district court erred in making the aforementioned ruling, appellants filed this timely appeal.
 

 DISCUSSION
 

 This court has held that it will conduct an independent review of an administrative agency’s construction of a statute where the facts are not in dispute.
 
 See
 
 American Int’l Vacations v. MacBride, 99 Nev. 324, 326, 661 P.2d 1301, 1302 (1983).
 
 *477
 
 Because the facts are not in dispute in this matter, and indeed have been stipulated to, this court’s review is de novo.
 

 The board, and later the district court, concluded that NRS 288.027 did not prohibit the union from charging a nonmember costs for the union’s grievance representation services. Appellants first contend that this conclusion is erroneous because the union, as the ‘ ‘bargaining agent’ ’ of UMC employees, is obligated by the plain language of NRS 288.027 to “exclusively” represent all UMC employees, including nonunion members, in all grievance matters without charging a fee.
 
 [2]
 
 We disagree.
 

 A.
 
 NRS 288.027
 

 NRS 288.027 defines a bargaining agent as an “exclusive” representative:
 

 an employee organization recognized by the local government employer as the exclusive representative of all local government employees in the bargaining unit for purposes of collective bargaining.
 

 Because of the inclusion of the word “exclusive,” appellants conclude that the union is not allowed to “pick and choose” which of the representational activities that it will provide free of charge because its statutory designation as the “exclusive representative” requires it to provide all services for free. We do not agree that the mere inclusion of the word “exclusive” in and of itself prohibits a union from charging nonunion members service fees for individual grievance representation.
 
 [3]
 

 See
 
 National
 
 *478
 
 Treasury Employees Union v. Federal Labor Relations Auth., 800 F.2d 1165, 1167 (D.C. Cir. 1986) (noting that there was “nothing particularly plain or compelling about the text [of a similar federal statute], standing alone”).
 

 Further, with regard to statutory language, there is another Nevada statute, NRS 288.140(2), that explicitly authorizes a nonunion member to act on his own behalf ‘ ‘with respect to any condition of his employment.’ ’ This statute provides an individual with a right to forego union representation. Implicit in the plain language of this provision is the requisite that a nonunion member pay for pursuing his or her own grievance, even if such payment is made to the union.
 

 Accordingly, we conclude that there is nothing in the plain language of NRS 288.027 that would prohibit the union from charging nonmembers fees for individual representation.
 

 B.
 
 Right to work laws
 

 Appellants next contend that the policy violates Nevada’s right to work laws. Nevada’s right to work laws, particularly NRS 613.250, were enacted for the express purpose of guaranteeing every individual the right to work for a given employer regardless of whether the worker belongs to a union.
 
 See
 
 Independent Guard Ass’n v. Wackenhut Servs., 90 Nev. 198, 202-03, 522 P.2d 1010, 1013 (1974). In
 
 Wackenhut,
 
 this court invalidated an agency shop agreement, an agreement to pay fees to a labor organization in lieu of membership dues, because it violated NRS 613.250 since it was equivalent to conditioning employment on union membership. 90 Nev. at 203, 522 P.2d at 1014.
 

 The instant policy is unlike the agency shop agreement in
 
 Wackenhut,
 
 because paying a service fee for grievance representation is not a condition of employment. Indeed, an individual may opt to hire his or her own counsel, and thereby forego giving the union any money at all without fear of losing his or her job.
 

 Accordingly, we conclude that the policy does not violate Nevada’s right to work laws.
 

 C.
 
 NRS 288.140(1) and NRS 288.270(2)
 

 Appellants’ final argument is that the union discriminated against its nonunion members, and thereby breached its duty of fair representation set forth in NRS 288.140(1) and NRS
 
 *479
 
 288.270(2) by charging nonunion members a service fee for individual grievance representation.
 
 [4]
 
 We disagree.
 

 NRS 288.140(1)
 
 [5]
 
 sets forth the union’s duty of fair representation and explicitly states that a local government employer shall not discriminate based on membership or nonmembership in an employee organization. Further, NRS 288.270(2) describes the prohibited practices of an employee organization, including that it may not:
 

 (a) Interfere with, restrain or coerce any employee in the exercise of any right guaranteed under this chapter.
 

 (c) Discriminate because of . . . political or personal reasons or affiliations.
 

 We see no discrimination or coercion, however, in requiring nonunion members to pay reasonable costs associated with individual grievance representation, and therefore conclude that the union did not violate the aforementioned statutes.
 

 There is persuasive authority and a compelling rationale in support of our conclusion. First, several other jurisdictions have held that requiring nonunion members to pay costs for union representation was not discriminatory, coercive or restraining.
 
 See
 
 Schaffer v. Board of Education, 869 S.W.2d 163, 166-68 (Mo. Ct. App. 1993); Opinion of the Justices, 401 A.2d 135, 147 (Me. 1979).
 

 Second, like the Supreme Judicial Court of Maine, we are convinced that the exclusive bargaining relationship establishes a “mutuality of obligation”: a union has the obligation to represent all employees in the bargaining unit without regard to union membership, and the employee has a corresponding obligation, if permissible under the CBA and required by the union policy, to share in defraying the costs of collective bargaining services from which he or she directly benefits.
 
 See Opinion of the Justices,
 
 401 A.2d
 
 *480
 
 at 147. Our recognition of this mutuality of obligation will, in part, serve to discourage “free riders”—employees who receive the benefits of union representation but are unwilling to contribute to its financial support.
 
 See Schaffer,
 
 869 S.W.2d at 166 (citing NLRB v. General Motors Corp., 373 U.S. 734, 743 (1963)).
 

 Although appellants cite much precedent,
 
 [6]
 
 including NLRB opinions, in support of their position, we reject this authority. Preliminarily, we note that this court is not bound by an NLRB decision when it determines that the statutes involved do not fall within the purview of the National Labor Relations Act.
 
 See
 
 Associated Gen. Contractors v. Otter Tail Power Co., 457 F. Supp. 1207, 1216 (D. N.D. 1978) (activities not listed in sections seven and eight of the National Labor Relations Act are within the jurisdiction of the state courts). Further, we disagree with this authority because it leads to an inequitable result that we cannot condone, by essentially requiring union members to shoulder the burden of costs associated with nonunion members’ individual grievance representation.
 

 Accordingly, we conclude that the union did not discriminate against nonmembers in enacting the policy, and that the policy merely recognized the mutuality of obligation that may arise under an exclusive bargaining arrangement.
 

 CONCLUSION
 

 Accordingly, we hold that the policy is not violative of NRS 288.027, Nevada’s right to work laws, NRS 288.140(1), or NRS 288.270(2). We therefore affirm the order of the district court.
 

 [1]
 

 Although the district court upheld the policy as interpreted, it remanded this matter to the board with instructions that the board require the union to rewrite the policy to clarify that the policy only applied to individual grievances, not generalized grievances that affect all employees.
 

 [2]
 

 Appellants also contend that the board erred in concluding that the statute of limitations barred appellants’ claim because the CBA provision authorizing the union to enact the policy had been in effect for six years. We agree. Appellants did not waive their right to contest the validity of the policy because they filed their claim within six months of the policy’s enactment.
 
 See
 
 NRS 288.110(4) (setting forth six-month statute of limitations); Fraternal Order of Police Haas Mem’l Lodge
 
 §1
 
 v. Pennsylvania Labor Relations Bd., 696 A.2d 873, 876 (Pa. Commw. Ct. 1997) (holding that the limitations period for the filing of an unfair labor practices charge is triggered when the complainant has reason to believe that an unfair labor practice has actually occurred); Las Vegas Police Protective Ass’n Metro, Inc. v. City of Las Vegas, EMRB Item No. 264, Case No. A1-04445474, at 5 (July 15, 1991) (courts construe the waiver doctrine strictly).
 

 Because we agree with appellants that they did not waive their right to object to the policy, we reach the substantive merits of their appeal.
 

 [3]
 

 We recognize that there is authority supporting appellants’ position.
 
 See
 
 International Assoc, of Machinists and Aerospace Workers, Local Union 697, 223 N.L.R.B. 832, 834 (1976) (describing the role of a union designated by statute as an “exclusive” bargaining agent). However, we disagree with the National Labor Relations Board’s (“NLRB”) conclusion that an exclusive
 
 *478
 
 bargaining agent cannot charge nonmembers fees for individual grievance representation.
 

 [4]
 

 Appellants assert several other arguments, including but not limited to their contention that the decision to assess a fee for grievance representation should be made by the legislature and that the policy unfairly concentrates the cost of grievance adjustment on nonmembers. We have considered appellants’ arguments and conclude that they lack merit.
 

 [5]
 

 NRS 288.140(1) provides that:
 

 It is the right of every local government employee, subject to the limitation provided in subsection 3, to join any employee organization of his choice or to refrain from joining any employee organization. A local government employer shall not discriminate in any way among its employees on account of membership or nonmembership in an employee organization.
 

 [6]
 

 Appellants’ citation of authority includes: National Treasury Employees Union v. Federal Labor Relations Auth., 721 F.2d 1402 (D.C. Cir. 1983); Del Casal v. Eastern Airlines, Inc., 634 F.2d 295 (5th Cir. 1981); Furniture Workers Div., Local 282, 291 N.L.R.B. 182 (1988); Columbus Area Local, American Postal Workers Union, 277 N.L.R.B. 541 (1985); International Association of Machinists and Aerospace Workers, Local Union No. 697, 223 N.L.R.B. 832 (1976).