**COMMERCIAL METALS COMPANY,**
**Plaintiff-Appellant,**

v.

**Sol WALKER, d/b/a Sol Walker & Company, etc., et al., Defendants-Appellees.**

**No. 30039.**

United States Court of Appeals,
Fifth Circuit.

March 2, 1971.

———◆———

Thomas C. MacDonald, Jr., Tampa, Fla., for plaintiff-appellant; Shackleford, Farrior, Stallings & Evans, Professional Assn., Tampa, Fla., Burlingham, Underwood, Wright, White & Lord, New York City, of counsel.

David J. Kadyk, Charles W. Pittman, MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendants-appellees.

Before TUTTLE, AINSWORTH and SIMPSON, Circuit Judges.

AINSWORTH, Circuit Judge:

This Florida-based diversity action was brought by Commercial Metals Company [Commercial] to recover an alleged overpayment of $28,025.89 from Sol Walker & Company [Walker] for scrap metal. Walker denied overpayment, contending that payment had been made in accordance with the terms of the contract. Walker filed requests for admissions, which were not answered, and thereafter moved for summary judgment. Commercial filed several affidavits in opposition to the motion which were not controverted by Walker. Based on the pleadings, admissions and affidavits on file, the District Judge, without stating reasons therefor, granted Walker's motion for summary judgment. Commercial appeals from the adverse judgment.

By written contract Commercial agreed to buy from Walker a minimum of 9,000 gross tons of melting steel scrap at a stated price, f. o. b. Commercial's vessel, Tampa, Florida. Delivery was thereafter made, the vessel, the DICORONIA, embarked on its journey, and payment was effected. Subsequently, Commercial allegedly discovered it had mistakenly paid Walker the sum of $344,165.56 representing 9,032.7 tons of scrap metal, whereas only 8,498.75 tons had been delivered, and brought suit for the overpayment.

The contract executed by the parties provides in pertinent part as follows:

"Terms 100% against actual railroad weights

"Remarks   Actual railroad weights and our inspection and grading at loadpoint to govern final settlement.

Confirms conversation Mr. Schwartz and Mr. Walker."

There is no evidence indicating the contents of the conversation between these two men.

The contract further provided that "All shipments * * * are subject to weight and grading ascertained at receiving mill, or yard."

The record at this stage abounds with disputes as to the amount of scrap metal

delivered by Walker as a result of various surveys made. For instance, a draft survey was made by Commercial's agent in Tampa, Florida, which disclosed the weight of the cargo to be 9,069.4 tons. This agent's affidavit, however, shows a miscalculation was made in the weight because the chart and deadweight scale made available by the master was neither correct nor reliable. Additional surveys were made when the cargo was discharged at Taiwan. An expert surveyor employed by Commercial, after having checked the draft surveys made at Taiwan and compared the results thereof with his own computations, concluded that the weight of 8,498.75 tons shown by those surveys was substantially accurate. Commercial contends that this figure is the actual amount of scrap metal delivered by Walker. Walker, however, relies on the contract and contends that according to its terms, the invoice which it submitted, based on 9,032.7 tons of scrap metal, was correct.

Without expressing a view as to which party should prevail on the merits, we find the existence of several genuine issues in regard to material facts. Under the circumstances, the District Court erred in granting defendant's motion for summary judgment.

Appellee, Walker, contends that draft surveys to determine total tonnage were not contemplated by the parties, and that payment was made as required by the contract and agreed to by the parties. The contract does not support such a contention. We note initially that material portions of the contract are ambiguous. "Terms" are stated as "100% against actual railroad weights." Directly following this clause under "Remarks" the following provision qualifies the foregoing terms: 'Actual railroad weights *and our* [Commercial's] *inspection and grading at loadpoirt to govern final settlement.*' (Emphasis supplied.) There is the further qualifying clause relative to weight which provides that "All shipments * * * are subject to weight and grading ascertained at receiving mill, or yard."

Conceding *arguendo* that Walker correctly interprets the contract as requiring actual railroad weights to be determinative, Walker has presented no affidavit that actual railroad weights were used in calculating the tonnage of cargo loaded. According to an uncontradicted affidavit furnished by Commercial's agent in charge of chartering vessels and ocean transportation of scrap steel cargo for Commercial, payment was based on a "so-called detailed weight certificate for 9,032.79 long tons" furnished by Commercial's agents in Tampa. The certificate, however, "covered the cargo loaded according to the weight tickets submitted by Sol Walker & Co." The tonnage was further substantiated by a copy sent to Commercial direct from Walker of "what purported to be the same rail and truck weight tickets said to amount in the aggregate to 9,032.79 long tons" and by Walker's invoice showing the same amount of tonnage. Lengthy, uncontroverted affidavits furnished by various individuals on behalf of Commercial show that the railroad certificates furnished by Walker represent weights of both rail cars and trucks which dumped scrap at a common dumping point in Walker's yard, after which the metal often was commingled. Walker had no weight tickets to show what was actually delivered to the DICORONIA. Some of the weight certificates were undated; others were dated approximately a year prior to delivery at shipside. It is impossible to determine from the present record to what the weight certificates relate, or that "actual railroad weights" were used.

It is axiomatic that under Rule 56(c) of the Federal Rules of Civil Procedure a motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the movant is entitled thereto as a matter of law. We have held that in considering such a motion the duty of the trial court is to determine whether such an issue exists rather than how that issue should be resolved, and only when it is clear what the truth is and where no genuine issue remains for trial should summary

judgment be granted. Cole v. Chevron Chemical Company, Oronite Division, 5 Cir., 1970, 427 F.2d 390, 393; Lighting Fixture & Elec. Sup. Co. v. Continental Ins. Co., 5 Cir., 1969, 420 F.2d 1211, 1213; United States v. Burket, 5 Cir., 1968, 402 F.2d 426, 430. In applying these precepts to this case, we conclude that the District Court was in error in summarily disposing of the case in view of the ambiguities contained in the contract and the disputed material issues which cannot be resolved without additional factual development.

Reversed and remanded.