James D. **HODGSON**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**LOCAL UNION NO. 920, INDUSTRIAL AND ALLIED WORKERS AND HELPERS, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Defendant.**

**Civ. A. No. 6700.**

United States District Court, E. D. Texas, Beaumont Division.

May 14, 1971.

Truett E. Bean, U. S. Dept. of Labor, Dallas, Tex., Robert Nicholas, Asst. U. S. Atty., Beaumont, Tex., for plaintiff.

L. N. D. Wells, Jr., Dallas, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

This suit was instituted by the Secretary of Labor, pursuant to Title IV of the Labor-Management Reporting and Disclosure Act of 1959, to declare an election of officers held by Local No. 920, Teamsters Union of America, to be null and void and for an order directing the Local to conduct a new election under the Secretary's supervision. Jurisdiction of this action is conferred upon the Court by Sections 402(b)[1] and 402(c)[2] of the Act [29 U.S.C. § 482(b) and (c)].

The Secretary's Complaint arises from the following background. Nominations of candidates for election to its various offices were made at a meeting of Defendant labor union on November 3, 1969, in Beaumont, Texas, at which time A. O. Joyner and Dan Zernial were nominated for the office of President. The election was held in Lufkin, Texas, on December 12 from 9 a. m. to 3 p. m. and in Beaumont on December 12, 13 and 14, from 8 a. m. to 5 p. m. each day. No provision for absentee balloting was made.

Late on December 14, 1969, after a first count in the race for President had produced extremely close results (Joyner, 172; Zernial, 176), the election committee and the observers for the con-

1. This section authorizes the Secretary to commence and prosecute such an action on timely complaint of a union member who has exhausted the available internal remedies afforded by the union whenever the Secretary, upon an investigation, finds probable cause to believe that the election was not in compliance with Section 401 of the Act.

2. This section empowers the Court to order a new election if it finds the violation "may have affected the outcome of an election."

testants agreed to lock the ballots and withhold a final determination of this race until they were able to make a more careful count the next day. On December 15, they recounted the ballots three times and announced a tie vote of 174 votes each for Joyner and Zernial. The election committee then recommended a runoff election. The candidates concurred and the election was held January 9, 10 and 11, 1970, resulting in Joyner receiving a majority of the votes and being installed as President of the union.

On December 16, 1969, four members of the Union protested the conduct of Defendant's December, 1969, election in a letter to the Local Union Executive Board. In their complaint, they challenged the counting of the votes, but did not complain about the method of nomination or the lack of absentee ballots. The Executive Board denied their protest, and the members enlarged their original protest to include a complaint about the proposed runoff and appealed to the President of Joint Council No. 58. After a hearing, that body also denied their protest. Two of the protestants thereupon withdrew their protests. The two remaining complainants then turned to the Secretary of Labor who investigated the complaint, and as a result of the facts shown by his investigation, found probable cause to believe that violations of Title IV of the Act had occurred during the conduct of the election and had not been remedied by the time of the suit.

■ Defendant Union makes a threshold objection to the consideration of the Secretary's suit, urging that the Secre-

tary lacks standing to assert matters which were not the subject of the union members' initial complaint. The Secretary's position, however, is that the Court can consider the additional allegations herein.

A similar jurisdictional question was raised recently in the case of Wirtz v. Local Union 125, Laborers' International Union, 389 U.S. 477, 88 S.Ct. 639, 19 L. Ed.2d 716 (1968). The Supreme Court observed that the announced objectives of the Act permit "the Secretary to include in his complaint at least any § 401 violation he has discovered which the union had a fair opportunity to consider and redress in connection with a member's initial complaint."[3] In the instant case, it appears to the Court that as a result of the protest directed to the election of officers of December, 1969, the union "had a fair opportunity to consider and redress" violations pertaining to that election which were later alleged by the Secretary. Accordingly, it is the Court's opinion that the Secretary properly filed the instant complaint and that the Court has jurisdiction over all the matters embraced within.

■ The Court now turns to the merits of the complaints. The government contends that Defendant's membership was denied any reasonable opportunity to nominate candidates for office in the December, 1969, election, as required by Section 401(e) of the Act,[4] in that any member who desired to nominate a candidate for office was required to attend a meeting in Beaumont, Texas, at 7:30 p. m. on November 3, 1969. In support of its position that some members did not have reasonable access to this desig-

3. The Supreme Court also stated:
"We reject the narrow construction adopted by the District Court and supported by respondent limiting the Secretary's complaint solely to the allegations made in the union member's initial complaint. Such a severe restriction upon the Secretary's power should not be read into the statute without a clear indication of congressional intent to that effect. Neither

the language of the statute nor its legislative history provides such an indication; indeed, the indications are quite clearly to the contrary."

4. 29 U.S.C. 481(e) reads:
"In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates."

nated place for nominations, the government offers testimony of several union members who would have had to travel at least 140 miles to attend the nominating meeting in Beaumont, but other testimony indicates that all members who wished to attend the meeting were able to do so, notwithstanding the traveling distance involved. Furthermore, it is apparent that all persons who desired to run for office were nominated, and that no nominations were ignored or refused. The Court therefore finds that the membership of Defendant Union was not denied a reasonable opportunity to nominate candidates for office.

■ A second charge by the Secretary of Labor is that by not providing absentee ballots, Defendant Union denied some members a reasonable opportunity to vote for or otherwise support the candidate of their choice, as required by Section 401(e) of the Act.[5] The Secretary's contention is that at least five over-the-road truck drivers, members in good standing of the union, were out of the city and unable to vote and that Defendant refused to provide them with absentee ballots or to make any other arrangements whereby they might cast their ballots. The evidence, however, is to the contrary. The testimony shows that the three days in Beaumont and the one day in Lufkin during which the polls were open were adequate for anyone to vote who chose to do so. The Court is therefore not impressed with the union's failure to provide absentee ballots and further is of the opinion that the election committee exercised their best judgment in holding the polls open for several days rather than providing absentee ballots and risking wrongful manipulation of ballots. In this regard, the Court observes that the only case in

which it has been held that absentee ballots were mandatory was a case involving seamen who were at sea and obviously had no choice of attending or not attending the polls as did the members in the instant case. See Goldberg v. Marine Cooks & Stewards Union, 204 F.Supp. 844 (N.D.Calif., 1962). As the court said in Wirtz v. Local Union 262, Glass Bottle Blowers Ass'n, 290 F.Supp. 965, 968 (N.D.Calif., 1968), "The Act does not require that absentee voting be allowed," although once a union makes it available, notice of such availability is required for all members.

■ Another allegation made by the Secretary of Labor is that Defendant Union did not provide "adequate safeguards to insure a fair election," as required by Section 401(c) of the Act,[6] in that the election judges were inaccurate in counting the votes and in announcing the results of the election. Plaintiff bases this challenge on the alleged failure of the judges "to follow consistently the same criteria for determining the validity of the ballots used and in counting the votes." He urges that the intent of the voter to favor Zernial on several ballots that were voided December 15, 1969, was as clear as were the votes for other candidates for whom ballots were counted. It is the Court's opinion, however, after an analysis of the ballots, that this argument lacks validity. The record reveals that the judges in counting the votes used the consistent criteria of reasonably determining the clear intent of the voter on each ballot. A further examination shows that they counted all the ballots in which they could reasonably determine this intent. In addition, the election committee minutes indicate that the judges were careful to insure that their determinations were

---

5. 29 U.S.C. 481(e) reads:
"In any election required by this section which is to be held by secret ballot * * * every member in good standing shall be eligible to be a candidate and to hold office and shall have support the candidate or candidates of the right to vote for or otherwise his choice."

6. 29 U.S.C. 481(c) reads:
"Adequate safeguards to insure a fair election shall be provided, including the right of any candidate to have an observer at the polls and at the counting of the ballots."

made under favorable circumstances. Rather than recount the votes late Sunday night when they were tired, they adjourned and resumed their deliberations on Monday morning. During this deliberation stage, they permitted each candidate for President to have an observer in the room where the votes were counted. Furthermore, before the judges announced the final result of a tie vote, they discussed the voiding of the ballots with the observers who concurred in their determinations. In light of these facts, it is apparent to the Court that the votes were correctly counted and that a tie vote was the proper result of the election.

 The Secretary of Labor further challenges the adequacy of instructions written on the ballots.[7] The alleged lack of sufficient instructions is also said to violate Section 401(c) of the Act which requires "adequate safeguards to insure a fair election." The government apparently is contending that because the three election judges held 13 out of 361 ballots to be void, the instructions must have been inadequate. With this contention the Court cannot agree. The government has failed to produce any evidence whatsoever that any voter misunderstood the instructions. To the contrary, there is testimony that 328 of the ballots were cast perfectly by marks striking through names for each office. In other words, 91% of the ballots had markings which selected candidates and which were satisfactory both to the election judges and to the government. Another 5% of the ballots were counted as the intent of the voter was clear although the voters had not marked lines through some names or had put an additional checkmark by certain names to emphasize their choices. Since a total of 96% of the voters evidently understood the ballot instructions, the Court finds that Defendant gave its membership adequate instructions for marking the ballots.

 The final allegation made by the Secretary of Labor is that Defendant Union did not exercise control over the supply of ballots and thereby failed to provide "adequate safeguards to insure a fair election." The government bases this argument on evidence that no verification of the actual number of persons who voted could be made because there was never a count of the number of ballots or the number of voters. It is suggested that these circumstances "cast doubt upon the validity of the election." Defendant denies any tampering with the number or the face of the ballots and relies on evidence which discloses that from the time the ballots were picked up at the printer to the conclusion of the counting, they were either sealed and placed in a vault or kept in the view and possession of the election committee and observers. From the above facts, it is apparent to the Court that the election committee used due care to insure the security of the ballots and exercised proper control over their supply.

Having heard the testimony and carefully reviewed the pleadings, the evidence, including all exhibits, arguments and briefs filed by counsel, the Court is of the opinion, and so finds, that the election of officers of Local Union No. 920 has been in substantial compliance with the statute and that the will of the membership has been expressed. It is ordered that final judgment will be entered for the Defendant.

---

7. Written instructions appeared parenthetically below the list of candidates for President and Secretary-Treasurer and read as follows: "Vote for one."

In addition, below the list of candidates for Trustees were the following instructions: "Vote for three, mark out names not voting for."