James D. HODGSON, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

LOCAL UNION 582, etc., Defendant.

No. 71-2728.

United States District Court,
C. D. California.

Oct. 13, 1972.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr. Asst. U. S. Atty., Chief, Civ. Div., Dzintra I. Janavs, Asst. U. S. Atty., for plaintiff.

O'Donoghue & O'Donoghue, Washington, D. C., and Brundage, Neyhart, Miller, Ross & Reich, Los Angeles, Cal., for defendant.

## MEMORANDUM OF OPINION AND JUDGMENT FOR DEFENDANT

IRVING HILL, District Judge.

In this case, the Secretary of Labor, acting under Title IV of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 401 ff., challenges the May, 1971 election of officers of Defendant local union. There are two separate challenges. The first is based upon the fact that the local did not provide for absentee voting. The second is based upon an alleged refusal of the local to mail out campaign literature of Mr. Dywan, a candidate for the Executive Board. The first is by far the most substantial issue. The second is disposed of in a single paragraph at the end of this memorandum. The case was tried entirely on stipulated facts.

### FACTS

The Defendant local covers the whole of Orange County, California. At the time in question, the local had 1,531 members of whom 1,176 were eligible to vote.[1] The by-laws of the local do not require or provide for voting by absentee ballot. The constitution of the International union permits the General [International] President, in his discretion, to authorize absentee ballotting in a given election where the local requests such authorization. Prior to the election, at a meeting attended by 150 members, Defendant local requested the General President to approve the use of absentee ballots for the May, 1971 election. However, the General President

refused to do so. The telegram announcing the refusal states that the refusal was "based on the fact the members who are on travel card outside the state of California are very much in the minority."

As of the election date, 1,176 members were eligible to vote and 767 of these voted. One hundred eighty-eight eligible members were on travel card status on election day and 87 of these voted. Travel card status is a procedure whereby a member may work at a distance from his home local and in the operating area of another local by depositing his union card with the local in whose area he works. (How such a member pays his dues and to whom and how, if at all, the two locals divide his dues are not made clear in the stipulated facts.) Some members of Defendant local have been on travel card status working in other areas for years (up to ten years) and many travel card members live at various places far away from Orange County. On the date in question, 61 of the 188 eligible members on travel card status lived outside of California or inside California but more than 100 miles from the polling place. Apparently a member living and working in an area outside Orange County has the option to transfer his membership to the local covering the area in which he works or to keep his affiliation with Defendant local by going on travel card status. Many, if not most, of the travel card members affected have kept their ties with Defendant local because Defendant local has especially high funeral benefits. But for those benefits, such members would have transferred their membership to the locals in whose area they were working.

There were also more than 200 retired members who were eligible to vote in the election at issue. Retired members also move away from Orange County quite frequently. Of the retired members, 159 lived within 50 miles of the

---

1. Apprentices, journeymen who are employers or have an interest in a plumbing business, and members who have not been in good standing for one year prior to the election, are not eligible to vote.

polling place (89 of that group voted), 20 lived 50 to 100 miles away (8 of them voted), 13 lived over 100 miles away (none of these voted), and 19 lived outside of California (4 voted).

In the election, some of the contests were decided by very close votes and some by much larger margins. In the case of the President, with three candidates running, the winner won by 249 votes over the runner-up. In the case of Business Manager, the margin of difference was 15 votes. For the Executive Board, where 4 were elected out of 8 candidates, the closest loser had only 2 votes less than the lowest winner. For Business Agent, where 2 were elected out of 4 running, the closest loser lost by 47 votes as against the lowest winner. For Financial Secretary-Treasurer, the loser lost by a seven to one margin. If there was any illegality resulting from failure to allow absentee voting, it is clear that such illegality may have affected the result of some but not all of the offices filled at this election. However, that question is moot because, as indicated *infra*, I find no illegality to have occurred.

### THE APPLICABLE LAW

Section 401(e) of the Labor Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 481(e)) is the governing statute. It provides in relevant part as follows:

"In any election required by this section which is to be held by secret ballot, *a reasonable opportunity* shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate to hold office . . . and shall have the right to vote for or otherwise support the candidate or candidates of his choice . . . .. The election shall be conducted in accordance with the Constitution and by-laws [of the union] insofar as they are not inconsistent with the provisions of this subchapter." (italics supplied).

It should be noted that neither the statute nor the regulations issued by the Secretary of Labor pursuant to a quite broad rule-making power (29 C.F.R. 452 ff.) require absentee voting in any situation. Absentee voting is not even mentioned in either the statute or the regulations.

Prior judicial opinions have construed the command that each member in good standing shall have "the right to vote" to require only that each such member shall have "a reasonable opportunity" to exercise his franchise. Cf. Hodgson v. Local Union No. 920, 327 F.Supp. 1284 (E.D.Tex.1971); Wirtz v. Local Union 169, International Hod Carriers' etc., 246 F.Supp. 741 (D.Nev.1965). In the briefs, both sides apparently adopt this construction of the statute. So the question posed by the instant case becomes whether each member in good standing of Defendant local had a "reasonable opportunity" to vote in the May, 1971 election. As I see that question, it must be decided objectively, under the particular facts and circumstances of this case and this election. Cf. Wirtz v. Local 169, *supra*. The fact that the Defendant local asked for permission to use absentee voting, and the fact that the General President, in denying the request, gave a reason which is not, in my view, particularly persuasive, are both essentially irrelevant to decision of the ultimate issue.

Neither side has cited anything in the legislative history which is controlling or even particularly persuasive. Defendants note that some members of Congress, debating the statute, recognized that absentee voting in union elections carries a considerable risk of irregularity and corruption not found in in-person voting. *See* Hearings on the Labor Management Reporting Act Before the Senate Subcommittee on Labor of the Committee on Labor and Public Welfare, 86th Cong., 1st. Sess. (1959). There is also a central theme recurring in the legislative history that Congress did not desire to intrude unduly into in-

ternal union affairs or inhibit the considerable discretion which, in Congress' view, the unions should have in the conduct of their affairs. This reluctance to interfere was said to apply particularly to union elections so long as those elections were conducted in accordance with democratic principles. Wirtz v. Local Union 262, Glass Bottle Blowers, 290 F. Supp. 965, 967 (N.D.Cal.1968); 59 U.S. Code Congressional and Administrative News, p. 2323, ff.

The only published opinions discussing a right to absentee ballotting under Title IV of the Act are District Court opinions. They are cited in the footnote.[2] Goldberg v. Marine Cooks, *supra*, and Wirtz v. National Maritime Union, *supra*, are the only two cases in which absentee voting has been held to be a necessary part of a "reasonable opportunity" to vote. Both of these cases involve seamen's unions in which every member of the union who was at work on election day was perforce unable to come in person to vote. In such a situation, it is obvious that nothing less than absentee voting (or keeping the polls open at the home base for months) would result in an election conducted in accordance with democratic principles. And a refusal of absentee voting would in effect disfranchise almost the entire electorate. I agree with the result in both cases. But the facts make both entirely distinguishable from the instant case.

In the other cases, the Secretary's effort to require absentee voting has failed. Perhaps the best reasoned of these latter cases is Wirtz v. Local 169, *supra*. There, Judge Bruce Thompson holds that the Court must examine the voting arrangements actually employed in the light of the circumstances of the particular local union and its membership as shown by the evidence,

to determine whether there has been an "unreasonable deprivation" of the opportunity to vote. In so doing, the Court may, Judge Thompson says, consider the risks, complexities and dangers of abuse resulting from mail voting in union elections, as balanced against the "over-all benefits to be gained." Wirtz v. Local Union 169, International Hod Carriers, etc., *supra*, 246 F.Supp. at 753. I adopt the same approach. Under it, the question is not whether better procedures could have been adopted or whether it could have been made more convenient for some persons to vote, but whether the Court finds the actual arrangements made by the local so lacking in democratic principles and so unfair, in denying a reasonable opportunity to vote to a significant number of members, that the election must be voided. The arrangements employed must be held to be beyond the permissible discretion of the union. Such judicial action should not be lightly taken. The Plaintiff has a substantial burden to impel such a determination with the resulting upset of an election. The Plaintiff has not met the burden in the instant case.

The Secretary apparently does not agree with the concept I have just enunciated limiting the Court's function in election cases. The Secretary makes a frontal argument to the effect that the Court should *require* absentee voting in every local union election where it is inconvenient for any member of the union to vote in person. As the Secretary puts it in his brief, the Court should "recognize that an effective right to vote includes the right to an absentee ballot, where the right to vote cannot otherwise be conveniently exercised."

Within the membership of any sizeable local union, on any given date, there will be many persons who cannot "conveniently" come in person to vote. Some will be on vacation, some will be ill,

2. Wirtz v. Local Union 169, International Hod Carriers', 246 F.Supp. 741 (D. Nev.1965); Goldberg v. Marine Cooks and Stewards Union, 204 F.Supp. 844 (N.D.Cal.1962); Wirtz v. National Maritime Union, 284 F.Supp. 47 (S.D.N.Y. 1968), aff'd on other grounds 399 F.2d 544 (2nd Cir., 1968); Hodgson v. Local Union No. 920, 327 F.Supp. 1284 (E.D. Tex.1971).

some will be out of the jurisdiction on necessary family and personal business, some will be at work at sites far away from the polling place. For the Court to accede to the Secretary's argument and require absentee voting arrangements for all union elections where the electorate is sizeable in number, would be judicial legislation and outside the proper scope of judicial review as enunciated above. Such a sweeping requirement should come either from Congress or from the Secretary under his rule making power.

Having declined to impose the requirement of absentee voting in every case of a large local union, I now proceed to apply the test enunciated in Wirtz v. Local 169, *supra*, i. e., whether the arrangements employed, under the circumstances of this particular election and local, resulted in unreasonable deprivation of the right to vote for any significant group of members.

 I find nothing about the instant case that would impel me to upset the election because of the lack of absentee voting. The Secretary points to the large number of travel card members living away from Orange County. Whether this local has a large number in comparison to other plumbers' locals and locals of other unions is not discussed in the stipulated facts. But even assuming that the number of travel card members and retired members in this local was relatively large, their numbers *per se* would not make the election procedures actually employed incompatible with democratic principles. A travel card or retired member, choosing to live at a distance from his local union, assumes the risk of finding it expensive or inconvenient to come back home to vote at a union election. As to the travel card member, it seems clear that if he wants a voice in the election of his local's officers without the necessity of traveling great distances, he has the option to affiliate with the local in whose area he

works. And it may be that retired members who have moved away have the same option, although there is no evidence to that effect in the record.

In any event, even though a substantial number of travel card and retired members were inconvenienced by the lack of an absentee voting procedure, and their participation in the election was thereby rendered less likely, such factors may well have been counterbalanced by the expense, difficulty and risk of abuse inherent in absentee voting in this type of a local. Certainly, one cannot say that the decision against absentee voting exceeded the bounds of reasonableness. Nor did it deprive the local of the benefit of a contested election, democratically conducted. It should be remembered that 767 votes were cast, about two-thirds of the total of all eligible voters.

The Secretary attacks the action of the General President in denying the requests for mail balloting as being arbitrary and capricious because he characterized the travel card membership as "very much in the minority" and made no mention of the retired members living away from home base. In making this criticism, the Secretary would divert our attention from the central and essential issue. As stated above, the issue before the Court is not the persuasiveness of the reason given by the General President but whether the election arrangements actually employed denied to a significant group a "reasonable opportunity" to vote. I find that the arrangements used did not work such a denial and were within the union's discretion.

Both sides cite many cases dealing with absentee voting in governmental elections and whether absentee voting therein is a "right" or a "privilege." These cases, though interesting, are not determinative. At most, they furnished analogies, somewhat remote analogies.

I am, of course, aware that Congress has, in Section 202 of the Voting Rights Act amendments of 1970 (42 U.S.C. §§ 1973aa ff.) required the states to provide for absentee voting in public elections. The statute was found constitutional as affecting federal elections in Oregon v. Mitchell, 400 U.S. 112, 91 S. Ct. 260, 27 L.Ed.2d 272 (1970). However, neither the enactment of the statute by Congress nor *Mitchell* would appear to affect the result in this case. The fact that Congress has deemed it important to have absentee balloting in public elections does not furnish any compelling reason to believe Congress deemed absentee ballots equally important in union elections, especially where, as here, Congress could easily have put an absentee ballot requirement into the Labor Mangement Reporting and Disclosure Act but chose not to do so.

## DYWAN LITERATURE

The local set a date of April 26th as the cut-off date for mailing out to the members literature furnished by the various candidates. I find this deadline to have been reasonable and non-discriminatory and that Mr. Dywan did not meet it. He did not come in with his literature until May 4th. The election was set for May 12th. Because of his lateness, the local refused to mail his literature when he appeared with it on the 4th. However, the officers recanted and on the 7th made a clear and unequivocal offer to mail it out that day. This afforded adequate time for it to be received and considered by election day. But Dywan declined the offer of the 7th and none of his literature was mailed. Thus, I find that if there was any impropriety in the original refusal to mail his literature, it was cured by the offer on the 7th.

This memorandum opinion will constitute the Court's Findings of Fact and Conclusions of Law as well as the Court's Judgment in favor of Defendants and against Plaintiff.