**Ray MARSHALL, Secretary of Labor, Plaintiff,**

v.

**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Defendant.**

**Civ. A. No. 79–1440.**

United States District Court, District of Columbia.

Feb. 21, 1980.

On Proposed Judgment March 11, 1980.

Judgment March 11, 1980.

---

Karen L. Handorf, U. S. Dept. of Labor, and John Oliver Birch, Asst. U. S. Atty., Civ. Div., Washington, D. C., for plaintiff.

Daniel B. Jordan, Patrick J. Riley, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

FLANNERY, District Judge.

This case arises under the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C.A. §§ 401–531 (1975). Section 481 of Title 29 imposes various requirements for elections within labor unions, and section 482 authorizes the Secretary of Labor (Secretary) to investigate such elections and to sue to have them set aside if he finds "probable cause" to believe a violation of section 481 has occurred. With respect to suits brought by the Secretary, section 482 provides that if a court finds "upon a preponderance of the evidence" that a violation of section 481 "may have affected" the outcome of an election, the court "shall declare the election . . to be void and direct the conduct of a new election under the supervision of the Secretary. . . ."

Here the Secretary sues to set aside fourteen elections for positions in the American Postal Workers Union (APWU), alleging violations of various parts of section 481 and of APWU's constitution. He moves for summary judgment. The court finds that summary judgment should be granted with respect to all of the challenged elections.

*Merits*

The fourteen elections may be divided into two groups, the first involving Carl Taylor's candidacy for the Administrative Vice-Presidency of the Motor Vehicle Division, one of five craft divisions within APWU, and the second involving thirteen other elections that were flawed by both the defendant's failure to send ballots to some union members who were eligible to vote and the wrongful mailing of ballots to persons ineligible to vote.

■ 1. Carl Taylor's campaign statement was the only statement left out of the August 1978 issue of *The American Postal Worker*, which was distributed to all union members. The publication printed his statement in the next issue, which came out in September, but then it mislabelled the office for which he was running, listing him as a candidate for office in the Maintenance Division rather than the Motor Vehicle Division. Taylor lost by 172 votes out of 3,800 votes cast.

The key statutory provision is subsection 481(c), which mandates the provision of "[a]dequate safeguards to insure a fair election." That subsection also provides that whenever a labor organization or its officers "authorize the distribution by mail or otherwise to members of campaign literature on behalf of any candidate or of the labor organization itself . . ., similar distribution at the request of any other bona fide candidate shall be made by such

labor organization . . . ." The court is persuaded that under the circumstances here Taylor did not enjoy either a "fair election" or "similar distribution" of his campaign literature.

Moreover, the court is persuaded that these violations "may have" affected the outcome of the election. Clearly, because Taylor was known personally by only a tiny fraction of the persons eligible to vote for that office, the proper dissemination of his campaign statement was vital to his candidacy. Also, because the statements of all the other candidates appeared in the August issue, that issue no doubt became a sort of voting manual for union members. Finally, when the position for which Taylor was running was mislabelled in the September issue, members of Taylor's craft division had no reason to suspect an error had occurred. In view of these factors, the court is required to declare the election void.

2. The key statutory provision with respect to the other thirteen elections is subsection 481(e), which provides that "[e]ach member in good standing shall be entitled to one vote." Subsection 481(e) also provides that elections "shall be conducted in accordance with the constitution" of the union. The relevant constitutional provision to which the latter refers provides that one is eligible to vote if he is "in good standing according to the official records of the union on August 29 of the election year." Article X, section 5. The Secretary contends that the elections involved violations of section 481 and the APWU constitution, because members in good standing were denied votes to which they were entitled and because persons who were not members in good standing received ballots and voted. The defendant concedes that such violations occurred. It contends, however, that the number of persons in each category was comparatively small and therefore that these violations did not affect the outcome of the elections. Thus, the dispute is essentially one of numbers.

At the outset it is necessary to resolve a basic dispute regarding how to determine whether a violation may have affected the outcome of an election. Both sides agree that if the sum of the number of eligible voters who did not receive ballots and the number of ineligible voters who did receive ballots is less than the margin of victory in a given decision, then the violations could not have affected the outcome. But the defendant challenges the plaintiff's contention that if the sum of these two numbers is greater than the margin of victory, then the court should necessarily assume that the violation may have affected the outcome. Rejecting this theory of the "maximum theoretical possibility" in favor of a theory of "reasonable probability," the defendant contends that the court should determine statistically what percentage of those who received ballots actually voted and adjust the gross figures accordingly.

To be sure, the theory of the maximum theoretical possibility is imperfect, because it assumes that all those who could have voted would have voted and that those who would have voted would have voted unanimously. Nevertheless, the liberal "may have affected" standard set forth in section 482 appears to call for application of this theory, and this is the theory consistently applied by the courts. *See, e. g., Wirtz v. Local Union No. 125*, 270 F.Supp. 12, 20 (N.D.Ohio 1966); *Wirtz v. Local Union 169*, 246 F.Supp. 741, 754 (D.C.Nevada 1965). *See also Wirtz v. Hotel, Motel and Club Employees Union*, 391 U.S. 492, 88 S.Ct. 1743, 1752, 20 L.Ed.2d 763 (1968) (holding that a proven violation of the LMRDA establishes a prima facie case that the outcome of the election may have been affected). Thus, the defendant's position on this issue must be rejected.

In support of his position that the defendant wrongfully denied members in good standing the right to vote, the plaintiff argues that APWU failed to send ballots to approximately 2,500 voters who had signed dues checkoff forms and delivered those forms to their local unions by August 29, 1978. The defendant agrees that the dues checkoff forms are critical, but it says that one is not a member—and one's name therefore does not go on the master voting

list—until he signs that form and it travels from the local office to the national headquarters and is there accepted and recorded.

■ At present this process of having one's name recorded on the master voting list at the national headquarters often involves a number of delays. For example, as the defendant admits, "Local union officers . . . often do not forward [the 1187 dues checkoff forms] to headquarters promptly. Some make a practice of accumulating 1187's till a batch have collected and are sent together." Defendant's Opposition, p. 7. This court is not convinced that such administrative failings are compatible with the mandate of the LMRDA or the APWU constitution. Article X, Section 5 of that constitution affords the right to vote to members "in good standing according to the official records of the union. . . ." There is no reason to think local union records are not "official records of the union" within the meaning of that provision, so it follows that persons whose dues checkoff forms are accepted by the local offices are union members entitled to vote. Also weighing in favor of the plaintiff's position is the fact that the APWU constitution provides that dues shall not be deducted until one is a member in good standing, and it is the practice of APWU to deduct persons' dues as soon as the 1187 forms are processed by the *local* offices. Although the court recognizes the difficulties involved in keeping current the voting lists for an organization as large as APWU, it is nevertheless persuaded that the defendant's failure to send ballots to those persons violated section 481.

With respect to the Secretary's charge regarding a significant number of ineligibles who received ballots, the defendant virtually concedes that over 600 persons fall into this category. Defendant's Opposition, pp. 14, 19. Again, however, APWU cites the administrative difficulties of maintaining more accurate voting lists for a union of its numbers and geographic diversity. As before, the court rejects this argument. Although it would be unreasonable to construe the statute as requiring perfection, under the circumstances here it is clear that a violation of section 481 has occurred, and the court is persuaded that this violation may have affected the outcome of the elections.

■ The defendant makes the general argument that its duty is not to ensure flawless elections but only ones that are reasonably fair. It points out that thousands of names are added to and deleted from the master mailing lists each month, so perfect records are administratively impracticable. It says that the number of ballots sent to ineligibles represents only .5% of the total ballots mailed, and every member in good standing who did not receive a ballot could have requested one, as in fact many did. In support of this latter point, the defendant cites *Hodgson v. Local Union 582*, 350 F.Supp. 16 (C.D.Cal.1972), in which the court says that section 481(e) means only that each member entitled to vote shall have "a reasonable opportunity" to vote.

This argument, that from a comprehensive perspective the elections were reasonably fair, is unpersuasive. With respect to the point that all eligible persons could have requested ballots, it appears that the overwhelming majority of those who did not receive ballots were new members who would have had the least opportunity to learn of the elections and of how to obtain a ballot. Moreover, the defendant simply has not demonstrated that it has made adequate efforts to ensure the fairness of the elections. There is no indication that the administrative problems mentioned are insuperable, and the problem of delay in recognizing new members appears particularly amenable to improvement. Finally, the language in *Hodgson* notwithstanding, the statute does not direct the court to consider overall fairness but instead mandates an inquiry into whether violations of section 481 may have affected the outcome of the election. In this case it is the court's opinion that they did.

■ APWU lodges both general and specific attacks on the evidentiary basis of the plaintiff's charges. For example, it states,

"The Affidavits of Cahir and Eric Feldman (Plaintiff's Exhibit 8) are shockingly lacking in evidentiary support. No lists are attached, no names are provided, no supporting material is presented." Defendant's Opposition, p. 15. Also, the defendant makes detailed assaults on various specific numbers. Nevertheless, the court is persuaded that the evidentiary basis of the plaintiff's charges is sound; notwithstanding the absence of comprehensive documentation of the Secretary's findings, there appears no reason to doubt the affidavits submitted. Also, and this is the essence of the Secretary's case, even allowing for the errors in research and calculation that the defendant was able to expose, the numbers involved in the violations with respect to each of the fourteen elections were such that the outcomes may have been affected. That is, adjusting the Secretary's figures in accordance with the defendant's specific challenges, the number of ineligibles who received ballots plus the number of eligibles who did not receive ballots was greater than the margin of victory. These numbers, as presented by the Secretary, are as follows:

For the position of Administrative Assistant, Hospital Plan, the number of ineligible votes (824) plus the number of eligible members who did not receive ballots (2554) was 3,378. The margin of victory was 1317.

For the position of Director of Human Relations, the number of ineligible voters (824) plus the number of eligible members who did not receive ballots (2554) was 3,378. The margin of victory was 2760.

For the position of Clerk Craft National Executive Aide, the number of ineligible voters (647) plus the number of eligible members who did not receive ballots (1157) was 1,804. The margin of victory was 746.

For the position of Clerk Craft National Vice President, St. Louis Region, the number of ineligible voters (14) plus the number of eligible members who did not receive ballots (75) was 89. The margin of victory was 88.

For the position of Clerk Craft National Vice President, Washington, D. C. Region, the number of ineligible voters (38) plus the number of eligible members who did not receive ballots (92) was 130. The margin of victory was 42.

For the position of Clerk Craft National Representative, St. Louis Region, the number of ineligible voters (14) plus the number of eligible members who did not receive ballots (75) was 89. The margin of victory was 54.

For the position of Clerk Craft National Representative, San Francisco Region, the number of ineligible voters (92) plus the number of eligible members who did not receive ballots (156) was 248. The margin of victory was 85.

For the position of Clerk Craft National Representative, Seattle Region, the number of ineligible voters (21) plus the number of eligible members who did not receive ballots (48) was 69. The margin of victory was 54.

For the position of Maintenance Craft National Representative at Large, the number of ineligible voters (68) plus the number of eligible members who did not receive ballots (60) was 128. The margin of victory was 71.

For the position of Maintenance Craft Regional Representative, Minneapolis Region, the number of ineligible voters (5) plus the number of eligible members who did not receive ballots (3) was 8. The margin of victory was 3.

For the position of Maintenance Craft Regional Representative, San Francisco Region, the number of ineligible voters (4) plus the number of eligible members who did not receive ballots (46) was 50. The margin of victory was 9.

For the position of Maintenance Craft Regional Representative, Washington, D. C. Region, the number of ineligible voters (7) plus the number of eligible members who did not receive ballots (3) was 10. The margin of victory was 9.

For the position of Mail Handler Vice President, the number of ineligible voters (16) plus the number of eligible members

who did not receive ballots (619) was 635. The margin of victory was 104.

For the foregoing reasons, the court having considered all the arguments set forth in the briefs by the parties, the plaintiff must prevail in this case. It is therefore, by the court, this 1st day of February, 1980,

ORDERED that counsel for the plaintiff shall submit a proposed Judgment within five days of receipt of this Memorandum and Order.

## ON PROPOSED JUDGMENT

In a Memorandum and Order entered in this case on February 21, 1980, this court held that the American Postal Workers Union's violation of section 401(c) and 401(e) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 401(c) and (e), "may have affected the outcome" of elections for fourteen offices in the APWU. The plaintiff and the plaintiff in intervention have submitted proposed judgments that differ in several respects, particularly with regard to whether a new election should be conducted immediately. After consideration of the arguments put forth by the parties in their briefs and at the hearing, the court adopts the judgment proposed by the plaintiff Secretary of Labor Marshall.

In *Wirtz v. Local 153, Glass Bottle Blowers Ass'n*, 389 U.S. 463, 88 S.Ct. 643, 649, 19 L.Ed.2d 705 (1968), the Supreme Court noted the inflexibility of the mandate of section 402, stating,

Congress has unequivocally declared that once the Secretary establishes in court that a violation of § 401 may have affected the outcome of the challenged election, "the court *shall* declare the election * * to be void and direct the conduct of a new election under supervision of the Secretary * * *." 29 U.S.C. § 482(c). (Emphasis supplied.)

Similarly, in *Usery v. Dist. 22, United Mine Workers of America*, 543 F.2d 744 (10th Cir. 1976), the Court cited *Local 153* and the "mandatory language" of section 402 in overturning the district court's decision not to order new elections following a finding

that the defendant had violated section 401. *See also Wirtz v. Local Union No. 1622*, 285 F.Supp. 455, 465 (N.D.California 1968) (citing *Local 153* and declaring that "we do not have a choice" as to whether or not to order new elections in view of the violation of section 401).

In view of these precedents, as well as the deference due the Secretary of Labor, the court must grant the relief requested by the plaintiff. The request of the plaintiff in intervention that the voided elections be re-run as part of the previously scheduled general elections is inconsistent with the statutory mandate and the clear weight of authority. Of some significance is the fact that the order proposed by the plaintiff requires that the regular elections be held at the same time as the re-run elections; this procedure will minimize the financial burden of conducting the new elections for the voided offices.

With regard to the other differences in the proposed judgments, the court will defer to the Secretary of Labor.

An appropriate judgment accompanies this Memorandum Opinion.

## JUDGMENT

Based on the Memorandum and Order entered in this case on February 21, 1980, the Court finds that defendant APWU's violations of section 401(c) and section 401(e) of the LMRDA, 29 U.S.C. 481(c) and 481(e) "may have affected the outcome" of the defendant's 1978 election for the offices that are the subject of this litigation, namely: Motor Vehicle Craft Administrative Vice President, Administrative Assistant Hospital Plan, Director of Human Relations, Clerk Craft National Executive Aide, Clerk Craft National Vice President St. Louis Region, Clerk Craft National Vice President Washington, D. C. Region, Clerk Craft National Representative St. Louis Region, Clerk Craft National Representative San Francisco Region, Clerk Craft National Representative Seattle Region, Maintenance Craft National Representative at Large, Maintenance Craft Regional Repre-

sentative Minneapolis Region, Maintenance Craft Regional Representative San Francisco Region, Maintenance Craft Regional Representative Washington, D. C. Region, and Mail Handler Vice President. Therefore, pursuant to section 402(c) of the LMRDA, 29 U.S.C. 482(c), it is this 11th day of March, 1980,

.ORDERED that judgment is entered for plaintiff Secretary of Labor and intervenor Thomas E. Keefe, and against defendant APWU, and it is

FURTHER ORDERED that the election completed on October 27, 1978 for the offices listed above is declared null and void; and a new election for those offices shall be conducted forthwith under the supervision of the Secretary of Labor and, insofar as lawful and practicable, in conformity with the APWU Constitution and By-Laws, and it is

FURTHER ORDERED that the successful candidates in the directed rerun election shall take office immediately upon certification of the election results by the national Election Committee and shall serve the remainder of the current term and the next full term, and it is

FURTHER ORDERED, in recognition of the fact that under the Constitution and By-Laws of APWU the next regular elections of APWU are to commence so close in time to the conduct of the offices to be rerun, as aforesaid, as to make it impractical to conduct such regular election separate and apart from the rerun elections, said regular elections shall be conducted at the same time as the rerun elections under the supervision of the Secretary. Officers elected under this paragraph shall assume office November 7, 1980 for a full term.

FURTHER ORDERED, defendant APWU waives the right under 29 U.S.C. 482 to require members aggrieved in connection with all elections provided for herein to exhaust internal remedies prior to filing a complaint with the Secretary.

FURTHER ORDERED that all decisions as to the interpretation or application of Title IV of the LMRDA, and the provisions of the APWU Constitution and By-Laws relating to the supervised election for all offices are to be determined by the Secretary, and it is

FURTHER ORDERED that the Court shall retain jurisdiction of this case until the election is completed and the Secretary has certified the results and propriety of the election; upon submission of the certification, the Court will consider an appropriate Order declaring that such persons have been elected as shown by the certification.